UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VALVETECH, INC.,

                          Plaintiff,                      DECISION AND ORDER

vs.

                                                  19-CV-6829 (CJS)

OHB SYSTEM AG,

                          Defendant.

_____

      Plaintiff ValveTech, Inc. ("ValveTech") filed this action against Defendant OHB System AG ("OHB") for breach of contract, a declaratory judgment that the purchase order contract is unenforceable, and replevin. Am. Compl., Dec. 3, 2019, ECF No. 9. The matter is presently before the Court on ValveTech's motion to remand, and OHB's motion for partial dismissal of the complaint. Mot. to Remand, Dec. 3, 2019, ECF No. 10; Mot. to Dismiss, Jan. 8, 2020, ECF No. 15. For the reasons stated below, Plaintiff ValveTech's motion to remand [ECF No. 10] is denied, and Defendant OHB's motion for partial dismissal of the complaint [ECF No. 15] is granted in part and denied in part. OHB is directed to answer the remaining claims in Plaintiffs' complaint within thirty days of the date of this order.

BACKGROUND

      The following background has been drawn from Plaintiff's amended complaint, as well as "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The factual allegations contained in the complaint have been accepted as true, and all reasonable inferences drawn in Plaintiff's favor. *See Menaker v. Hofstra*

*Univ.*, 935 F.3d 20, 26 (2d Cir. 2019).

Plaintiff ValveTech is a New York corporation "in the business of, among other things, engineering, designing, developing, and manufacturing commercial valves for use in a myriad of applications and industries," including aerospace manufacturing. Am. Compl. at ¶ 5. Defendant OHB is an affiliate of the OHB Corporation, a European multinational technology corporation in the business of space systems and aerospace and industrial products. Am. Compl. at ¶ 7. In September of 2014, OHB effected a merger with a company with which ValveTech had been in negotiations to supply valves for the ExoMars Programme. Am. Compl. at ¶ 9, 13.

In February 2014, ValveTech shipped a development valve to OHB so that OHB could assess the valve's functionality and develop a cleaning specification for the ExoMars Programme. Am. Compl. at ¶ 37. The development valve was ruined in the course of OHB's testing, and OHB returned the valve to ValveTech for repair and improvement. Am. Compl. at ¶ 38.

In November 2014, ValveTech and OHB entered into a "Non-Disclosure and Proprietary Rights Agreement" ("2014 NDA") to protect ValveTech's "Confidential Information" as the parties continued to work together to develop a suitable valve design and cleaning specification. Am. Compl. at ¶ 14–15. In September 2015, ValveTech – acting at OHB's request – sent a second iteration of the development valve to OHB so that OHB could work further on a cleaning specification for the valve. Am. Compl. at ¶ 51. At some point, the second iteration, too, was destroyed during testing and had to be shipped back to ValveTech. Am. Compl. at ¶ 52.

In November 2015, OHB sent a purchase order to ValveTech requesting a "flight valve, spare valve, and qualification valve for use in the ExoMars Rover." Am. Compl. at ¶ 39. ValveTech did not issue an acknowledgement to OHB, and did not specify a ship date for the order. Am. Compl. at ¶ 40.

During the summer of 2016, the parties attempted to negotiate a three-party "Non-Disclosure and Proprietary Rights Agreement" ("2016 NDA") to protect ValveTech's "Confidential Information." Am. Compl. at ¶ 18. The negotiations included ValveTech, OHB, and Thales Alenia Space Italia S.p.A. ("Thales"), a direct competitor of ValveTech's, in connection with the ExoMars Programme. *Id.* Although ValveTech and OHB both signed the 2016 NDA, Thales did not. *Id.*

After further negotiation, ValveTech agreed to send another valve, the "spare valve," for OHB's testing on the condition that OHB pay the material costs for the units. Am. Compl. at ¶ 53–54. Prior to shipping the spare valve, ValveTech required OHB to sign both the Strategic Trade Authorization License Prior Consignee Statement ("STA Statement") and an End-Use Statement. Am. Compl. at ¶ 56. The STA Statement provided that OHB understood and agreed that "further release, reexport, transfer, or further disclosure would require the prior approval of the U.S. Government." Am. Compl. at ¶ 57. The End-Use Statement required OHB to certify that it would not "directly or indirectly export, re-export, transmit, or cause to be exported, re-exported or transmitted any Restricted Item to any country, individual, individual corporation, organization, or entity to which such export, re-export, or transmission is restricted or prohibited." Am. Compl. at ¶ 58. The End-Use statement also provided that the spare valve was supplied

for the limited purpose of "undergoing a bakeout at" OHB, and then would be returned to ValveTech for "a space qualification and test program at ValveTech Inc. (USA)." Am. Compl. at ¶ 59. OHB signed both statements on February 5, 2018. Am. Compl. at ¶ 56.

In March and April of 2018, ValveTech and OHB executed a third "Non-Disclosure and Proprietary Rights Agreement" ("2018 NDA"). The 2018 NDA prohibited the release, disclosure, use or duplication of ValveTech's "Proprietary Information" without the knowledge and consent of ValveTech. Am. Compl. at ¶ 31. In addition, OHB agreed that it would ensure any disclosure of proprietary information permitted under the agreement would not be contrary to any applicable laws and regulation, and that OHB would obtain ValveTech's written consent prior to requesting the authority to export confidential information subject to International Traffic in Arms Regulations ("ITAR") or Export Administration Regulations ("EAR") requirements. Am. Compl. at ¶ 32, 35. ValveTech shipped the spare valve to OHB on August 1, 2018. Am. Compl. at ¶ 61.

On September 20, 2018, ValveTech learned that OHB had exported the spare valve to Thales in Italy without the knowledge and consent of ValveTech, and without notifying the authorities controlling and overseeing such an export. Am. Compl. at ¶ 72. ValveTech terminated its relationship with OHB immediately, and further demanded that all ValveTech property be returned. Am. Compl. at ¶ 73. On September 26, 2018, at ValveTech's insistence, OHB notified the appropriate office at the U.S. Department of Commerce that it had exported ValveTech's "spare valve" to Italy without getting the appropriate approvals. Am. Compl. at ¶ 82. To date, OHB has not returned any of ValveTech's property or information, and ValveTech believes that the spare valve

provided to OHB in 2018 is installed in the ExoMars Rover. Am. Compl. at ¶ 75–77.

On February 21, 2019, ValveTech filed a complaint in New York State Supreme Court in Monroe County. Not. of Removal (Ex. 2), Nov. 8, 2019, ECF No. 1-2. ValveTech properly served OHB pursuant to the Hague Service Convention on October 11, 2019. Not. of Removal, ¶ 2, Nov. 8, 2019, ECF No. 1. On November 8, 2019, OHB filed a notice of removal to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Id.* at ¶ 27–29. Soon thereafter, OHB also filed a motion to dismiss ValveTech's complaint for failure to state a claim. Mot. to Dismiss, Nov. 15, 2019, ECF No. 5.

On December 3, 2019, ValveTech filed an amended complaint, and a cross-motion to remand this matter back to the Supreme Court in Monroe County. Mot. to Remand, Dec. 3, 2019, ECF No. 10. OHB renewed its motion to dismiss on January 8, 2020, and opposed ValveTech's motion to remand. Mot. to Dismiss, Jan. 8, 2020, ECF No. 15. OHB's motion to dismiss, and ValveTech's motion to remand, have both been fully briefed and are presently before the Court.

## VALVETECH'S MOTION FOR REMAND

ValveTech has moved the Court to remand this action back to the state court. ValveTech maintains that it elected to file suit in the New York Supreme Court in Monroe County in accordance with the forum selection clause in the parties' agreements, and that the matter should be remanded because OHB has failed to show why removal to this Court was necessary. Mot. to Remand at 5–6 (citing Mot. to Dismiss (Ex. C), Nov. 15, 2019, ECF No. 5-5, which is a copy of the 2018 NDA executed by the parties). OHB observes that the agreement between the parties provides that the parties submitted to

5

the exclusive jurisdiction of New York Supreme Court or the United States District Court, Western District of New York. Def.'s Mem. of Law, 18–19, Jan. 8, 2020, ECF No. 15-1. Given this choice, OHB argues that because it had proper grounds for removal, it also had the right to select which of the two listed forums it would litigate in. Def.'s Mem. of Law at 19.

"In recognition of the fact that, in the initial choice of forum, only plaintiffs have the opportunity to select the federal court, the statute conferring the right to remove on defendants is designed to allow defendants the same opportunity." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 356 (2d Cir. 1995).[1] Thus, 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." However, if a contract contains a forum selection clause, that clause controls unless the party seeking to escape its enforcement "clearly show[s] that [its] enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972).

Forum selection clauses are interpreted according to standard principles of

---

[1] ValveTech argues that the *Oppenheimer* case is not applicable to the circumstances of this case because ValveTech does not argue that removal is *procedurally* improper, but only *substantively* so. Reply, 4, Jan. 15, 2020, ECF No. 17. The Court disagrees. Based on a reading of numerous other cases in this Circuit, the Court believes the above-quoted passage from *Oppenheimer* to be an accurate description of the policy considerations underlying 28 U.S.C. § 1441(a). *See also Victorias Mill. Co. v. Hugo Neu Corp.*, 196 F. Supp. 64, 68 (S.D.N.Y. 1961) ("The purpose of the Removal Act in limiting removal to defendants is to restrict the right to the party who had no choice in the selection of the forum.")

contract law. *John Boutari & Son v. Attiki Importers*, 22 F.3d 51, 53 (2d Cir. 1994). The waiver of a party's statutory right to remove a case to federal court must be clear and unequivocal. *Cronin v. Family Educ. Co.*, 105 F. Supp.2d 136, 137–38 (E.D.N.Y. 2000). "An agreement conferring jurisdiction in one forum will not be interpreted as excluding jurisdiction elsewhere unless it contains specific language of exclusion . . . or it leaves it in the control of one party with power to force on its own terms the appropriate forum." *City of New York v. Pullman*, 477 F. Supp. 438, 442 n. 11 (S.D.N.Y. 1979).

In the present case, it is undisputed that the forum selection clause in the parties' 2018 NDA should control the selection of forum. The forum selection clause at issue reads, in pertinent part:

> This Agreement shall be governed by, interpreted and enforced in accordance with the laws of the United States of America and the State of New York, regardless of conflict of laws and principles, and the parties hereto unconditionally and irrevocably submit to (and waive any objection on the grounds of inconvenient forum or otherwise) the exclusive jurisdiction of the Supreme Court of the State of New York, County of Monroe or the United States District Court, Western District of New York, which courts shall have the exclusive jurisdiction to adjudicate and determine any suit, action or proceeding regarding or relating to this agreement.

Mot. to Dismiss (Ex. C), § 7.1, Nov. 15, 2019, ECF No. 5-5.

To be sure, the foregoing clause "contains specific language of exclusion" in that it narrows the parties' choice of forum to the New York Supreme Court in Monroe County, or the United States District Court for the Western District of New York. *See AGR Financial v. Ready Staffing, Inc.*, 99 F. Supp.2d. 399, 403 (S.D.N.Y. 2000) (remanding case where the clause contained both "specific language of exclusivity and the power of one party to force its choice of forum upon defendants"). Nevertheless, the clause does

7

not contain clear language of election, vesting in ValveTech the exclusive right to choose a particular court. *Compare Argonaut P'ship, L.P. v. Bankers Tr. Co.*, No. 96 CIV. 1970 (MBM), 1997 WL 45521, at *13 (S.D.N.Y. Feb. 4, 1997) (remanding the matter based on the forum selection clause's phrase "at the choice of the plaintiff").

Because 28 U.S.C. § 1441(a) affords defendants a qualified right of removal, and because the forum selection clause at issue does not contain language leaving "it in the control of one party with power to force on its own terms the appropriate forum," the Court hereby denies ValveTech's motion to remand this action to the state court. *See, e.g., GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat. Ass'n*, 242 F. Supp.2d 279, 283 (S.D.N.Y. 2002) (declining to remand where the clause did not expressly vest the power of election in either party).

## OHB'S MOTION FOR PARTIAL DISMISSAL

For its first cause of action, ValveTech alleges that OHB breached numerous provisions of the various contracts and agreements the parties had in place, including: the 2014 NDA, the 2016 NDA, the 2018 NDA, the STA Statement, the End-Use Statement, and ValveTech's "Terms and Conditions for All Sales." Am. Compl. at ¶ 84–128. OHB moves this Court to dismiss ValveTech's breach of contract claims because, OHB argues, ValveTech failed to plead damages with sufficient specificity. Alternatively, OHB argues that at the very least the Court should find that ValveTech's claims amount to breach of only a single contract – the 2018 NDA – and not the several that it lists.

For its third cause of action, ValveTech asserts a claim of replevin because it alleges that OHB has wrongfully retained possession of ValveTech's proprietary

information and derivatives therefrom. Am. Compl. at ¶ 139–144. OHB argues that ValveTech's replevin claim must be dismissed because it is duplicative. That is, OHB argues that replevin is effectively the damages that the parties agreed to in the event of a breach of the 2018 NDA contract.

Legal Standard

"[A] motion to dismiss for failure to state a claim tests only the sufficiency of a complaint." *Green v. Maraio*, 722 F.2d 1013, 1015 (2d Cir. 1983). To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Moreover, an action should also be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief . . . ." *Twombly*, 550 U.S. at 558. Nevertheless, "[f]act-specific question[s] cannot be resolved on the pleadings." *Comfort v. Ricola USA, Inc.*, No. 19-CV-6089 CJS, 2019 WL 6050301, at *2 (W.D.N.Y. Nov. 15, 2019) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (second alteration in original)). If presented with "two plausible inferences that

9

may be drawn from factual allegations," a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Id.* "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ." *Twombly*, 550 U.S. at 556 (citation omitted).

ValveTech's Breach of Contract Claim

New York law is applicable to the instant case. To adequately state a claim for a breach of contract under New York law, the plaintiff must plead plausible facts regarding: (1) the existence of a contract; (2) performance of the plaintiff's obligations; (3) breach by the defendant; and (4) damages to the plaintiff caused by the breach. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).

As indicated above, ValveTech has pled the existence of several contracts that it claims OHB breached, including: the 2014 NDA, the 2016 NDA, the 2018 NDA, the STA Statement, the End-Use Statement, and the "Terms and Conditions for All Sales" posted on ValveTech's website. Am. Compl. at ¶ 84–128. OHB argues that ValveTech's breach of contract claims should be dismissed because ValveTech has failed to plead damages with sufficient specificity, and, in the alternative, that ValveTech's claim amounts to breach by OHB of a only single contract – the 2018 NDA – and not the several contracts that ValveTech lists. The Court will address OHB's arguments out of order.

However, before addressing any of OHB's arguments, the Court reiterates that when deciding a Rule 12(b)(6) motion, it may not rely on matters outside of the complaint. Fed.R.Civ.P. 12(d). Nevertheless, "the complaint is deemed to include any written

instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002). Although ValveTech did not attach any of the alleged contracts to its complaint, with its response, OHB has submitted copies of all of the contracts above, except for the Terms and Conditions on ValveTech's website. *See* Mot. to Dismiss (Ex. A–Ex. K), ECF No. 15-2 to 15-13.

*STA and End-Use Statements*

With respect to the STA Statement and the End-Use Statement, after carefully reviewing the documents that OHB submitted, as well as the applicable regulatory regime, the Court finds that these two documents are not contracts. Rather, the STA Statement is a form that ValveTech, as the exporter of technology to a foreign national, was required by the U.S. Commerce Department to obtain from OHB, the recipient of the goods, pursuant to 15 C.F.R. § 740.20(d)(2). 15 C.F.R. § 740.20 is a section that creates a licensing exception for "exports, reexports, and transfers (in-country), including . . . technology to foreign nationals, in lieu of a license that would otherwise be required pursuant to part 742 of the [Export Administration Regulations]," a more restrictive regulatory regime dealing with the export of weapons and other highly sensitive goods. The End-Use Statement appears also to be a document relevant to obtaining the licensing exception. Because the STA Statement and the End-Use Statement are essentially administrative forms, the Court finds they are not – in and of themselves – enforceable contracts between the parties.

*Terms and Conditions*

With respect to the Terms and Conditions on ValveTech's website, which were published to OHB on the back of a "Certificate of Conformance" with the shipment of the spare valve, OHB argues that these terms and conditions did not constitute an enforceable contract because the terms were provided on a packing slip upon delivery of the valves, and hence there could not have been a meeting of the minds with respect to the essential terms of the contract. "To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound . . . ." *Kasowitz, Benson, Torres & Friedman, LLP v. Reade*, 98 A.D.3d 403, 404 (2012), *aff'd*, 20 N.Y.3d 1082, 987 N.E.2d 631 (2013). "Whether there was a meeting of the minds is a question of fact." *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 534 (2d Cir. 1975).

Here, ValveTech has adequately pled the existence of the agreement, and OHB has raised an issue of fact.[2] Such a question is more appropriately answered at the summary judgment stage.

*The Non-Disclosure Agreements*

With respect to ValveTech's allegations that OHB breached the 2014 NDA, the 2016 NDA and the 2018 NDA, the Court finds that ValveTech has adequately pled the

---

[2] In its papers, OHB makes a legal argument for dismissal, as well. OHB states that the "Terms and Conditions that are 'temporally decoupled from the transaction' are unenforceable as a matter of New York law because there is no way to review them until after entering into the transaction." Mem. of Law, ECF No. 15-1 at 16 (citing *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 294 (2d Cir. 2019)). However, the facts before the court in *Starke* were quite different than those alleged in this case. In *Starke*, the Second Circuit considered whether an arbitration clause was binding regarding an online sale where the term was included on a web-page that an individual consumer was expected to access through a hyperlink in a post-sale email. In the present case, we have two sophisticated manufacturing operations engaged in complex negotiations over the course of three years, and the shipment of a spare valve made in the course of those negotiations.

12

existence of all three agreements, and declines to rule at this stage that the 2014 NDA and the 2016 NDA were both superseded by the 2018 NDA. OHB argues that the entirety of ValveTech's claim for breach hinges upon OHB's act, in September 2018, of re-exporting Valvetech's spare valve to Thales in Italy for use in their space project. However, OHB's characterization of ValveTech's pleadings is not precisely accurate.

> In fact, ValveTech pleads as follows:
>
> 85. Upon information and belief, [OHB] improperly exported ValveTech's Confidential Information to a third-party direct competitor without its knowledge or permission in breach of the contracts and agreements between the parties.
>
> 86. In refusing to properly return ValveTech's Proprietary and Confidential Information, including any derivatives therefrom, which ValveTech provided to Defendant in connection with the ExoMars Programme, Defendant materially breached the NDAs.
>
> 87. Further, upon information and belief, Defendant has used and continues to use, directly or through derivative technology, ValveTech's Proprietary and Confidential Information despite the termination of its relationship with ValveTech . . . .

Am. Comp. at ¶ 85–87.

The distinction in ValveTech's pleadings between "Proprietary" and "Confidential" information is significant. Whereas the 2014 NDA and the 2016 NDA contemplate the exchange of "Confidential Information" between the parties, the 2018 NDA contemplates the exchange of "Proprietary Information." *See, e.g.,* Mot. to Dismiss (Ex. A), ECF No. 15-3 at ¶ 1 (defining "Confidential Information" in the 2014 NDA); Mot. to Dismiss (Ex. C), ECF No. 15-5 at ¶ 1.1 (defining "Proprietary Information" in the 2018 NDA). It may be that, as the case progresses, OHB is able to establish facts that demonstrate a unity of purpose such that the 2018 NDA really does supersede the 2014 NDA and the 2016 NDA.

13

At this stage of the proceedings, though, Valvetech's allegations of the evolving nature of its relationship with OHB, including the shipment and testing of three distinct valves and the involvement of a third party, Thales, in the 2016 NDA negotiations, is sufficient to establish a plausible claim for breach of three separate agreements.

*Damages*

Lastly, OHB argues that ValveTech's breach of contract claim should be dismissed because ValveTech failed to adequately specify damages. Under New York law, a plaintiff cannot prevail on a breach of contract theory unless he or she has sustained actual damages as a natural and probable consequence of such a breach. *Standard Fed. Bank v. Healy*, 7 A.D.3d 610, 612 (N.Y. App. Div. 2004).

In the present case, ValveTech alleges that as a "direct and proximate result" of OHB's conduct, it suffered damages in the amount of unpaid funds of $34,143.60, $1 million of lost research and development for the valve, $4 million of lost proprietary information, continuing attorney's fees, and a number of other possible damages that may be revealed during discovery. Am. Compl. at ¶ 128. The Court finds the damages pled to be proximate in effect, neither speculative nor uncertain in character, and reasonably foreseeable as a consequence of a breach. *See Lloyd v. Town of Wheatfield*, 492 N.E.2d 396, 396 (N.Y. 1986) (citing *Friedland v. Myers*, 34 N.E. 1055 (N.Y. 1893)). Further, while the Court agrees with OHB that attorney fees are usually not recoverable in breach of contract actions, the Court notes that at least one of the contracts – the 2014 NDA – provides for potential recovery of attorney fees. *See* Mot. to Dismiss (Ex. B.), ECF No. 15-3 at ¶ 9. In short, ValveTech has pled damages sufficient to satisfy the Fed. R.

Civ. P. 8 plausibility standards.

ValveTech's Replevin Claim

ValveTech claims that it owns proprietary information, including the valves it shipped to OHB and the requisite knowledge of how the valves can and should be used. Am. Compl. at ¶ 80. Further, ValveTech alleges a cause of action for replevin on the grounds that OHB has refused to return ValveTech's proprietary information, and instead transferred that information to one of its direct competitors. OHB argues that ValveTech cannot assert a replevin claim because the relief requested is duplicative of ValveTech's breach of contract claim.

"In New York, 'the law of replevin governs the actions for recovery of stolen property or wrongfully detained property.'" *Hui Qun Zhao v. Yu Qi Wang*, No. 10-CV-1758 JMA, 2013 WL 269034, at *4 (E.D.N.Y. Jan. 24, 2013), *aff'd*, 558 F. App'x 41 (2d Cir. 2014) (quoting *Dore v. Wormley*, 690 F.Supp.2d 176, 183 (S.D.N.Y.2010)). An action in replevin must "establish that defendant is in possession of certain property of which the plaintiff claims to have a superior right." *Id.* (quoting *Batsidis v. Batsidis*, 9 A.D.3d 342, 343 (N.Y. App. Div. 2004)). That is, to state a cause of action for replevin, a plaintiff must allege that he or she owns specified property, or is lawfully entitled to possess it, and that the defendant has unlawfully withheld the property from the plaintiff. *Khoury v. Khoury*, 78 A.D.3d 903, 904 (N.Y. App. Div. 2010) (citations omitted).

In this case, ValveTech clearly identified specific items of property that it believed belonged to it, including both tangible and intellectual property, and alleged that the items were either in OHB's or a third-party's possession. In addition, Valvetech alleged

that although it demanded that OHB return the property, OHB refused to do so. Thus, ValveTech has pleaded a cognizable cause of action for replevin and related relief.

OHB argues that ValveTech's replevin claim is duplicative of its breach of contract claim, and should be dismissed. Indeed, as the Second Circuit has stated, "If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir.1980). However, where a legal duty independent of the contract itself has been violated, a tort claim may be permitted to proceed. *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (citations omitted). In disentangling tort and contract claims, New York courts consider such factors as duties imposed by law as an incident to the parties' relationship (e.g., common carriers), the nature of the injury, the manner in which the injury occurred, and the resulting harm. *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992)

Here, ValveTech argues that OHB has an independent legal duty by virtue of the parties' relationship as exporter-importer of U.S. goods subject to the Export Administration Regulations: namely, the obligation to comply with the regulations. To the extent that return of ValveTech's Proprietary and Confidential property would serve ValveTech's interest in continued compliance with the Export Administration Regulations, as well, ValveTech's claim for replevin may proceed.

CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Plaintiff ValveTech's motion to remand the matter to the New York Supreme Court in Monroe County [ECF No. 10] is DENIED; and it is further

ORDERED that Defendant OHB's motion to dismiss the amended complaint [ECF No. 15] is granted in part, and denied in part. ValveTech's claims that OHB's conduct constituted a breach of contract with respect to the STA Agreement and the End-Use Agreement are dismissed. ValveTech's claims that OHB breached the 2014 NDA, the 2016 NDA, the 2018 NDA, and the Terms and Conditions, may go forward. ValveTech's claim against OHB for replevin may also go forward; and it is further

ORDERED that Defendant OHB must file an answer to Plaintiffs' remaining claims within thirty days of the date of this order.

Dated:    December 17, 2020
          Rochester, New York

                                          ENTER:


                                          _____
                                          CHARLES J. SIRAGUSA
                                          United States District Judge