**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

VALVETECH, INC.,

                              Plaintiff,

                  v.                                              Case No. 6:19-cv-06829-CJS-MJP

OHB SYSTEM AG,

                              Defendant.

**MEMORANDUM OF LAW OF DEFENDANT OHB SYSTEM AG IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
<u>DISMISSAL FOR FAILURE TO PROSECUTE</u>**

Karl Geercken, Esq.
Steven L. Penaro, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9471
karl.geercken@alston.com
steve.penaro@alston.com

*Attorneys for Defendant*
*OHB System AG*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND FACTS ................................................................................... 2

PROCEDURAL HISTORY ................................................................................ 8

MOTION FOR SUMMARY JUDGMENT ........................................................ 11

    LEGAL STANDARD ................................................................................. 11

    ARGUMENT ............................................................................................ 12

I.      Summary Judgment Is Warranted Based On The Record Evidence ................... 12

    A.    Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Breach Of Contract Claim................................................................ 12

        *(1)*    *OHB Did Not Breach Any Confidentiality Obligations To ValveTech Under The NDAs.* .................................................... 12

        *(2)*    *ValveTech Has Not Shown Resultant Damages.* ......................... 14

        *(3)*    *OHB Did Not Breach The Terms And Conditions.*..................... 17

    B.    Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Declaratory Judgment Claim. ............................................................... 18

    C.    Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Replevin Claim................................................................................. 20

MOTION, IN THE ALTERNATIVE, FOR DISMISSAL FOR FAILURE TO PROSECUTE .. 21

    LEGAL STANDARD ................................................................................. 21

    ARGUMENT ............................................................................................ 22

I.      ValveTech Has Failed To Prosecute This Action, As A Result of Which, It Must Be Dismissed.............................................................................. 22

CONCLUSION .............................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*24/7 Records, Inc. v. Sony Music Ent., Inc.*,
566 F. Supp. 2d 305 (S.D.N.Y. 2008) .............................................................. 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................... 11

*Broughel v. Battery Conservancy*,
No. 07 CV 7755 (GBD), 2010 WL 1028171 (S.D.N.Y. Mar. 16, 2010) ............ 16

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................... 12

*Chandok v. Klessig*,
632 F.3d 803 (2d Cir. 2011) ............................................................................ 12

*Chira v. Lockheed Aircraft Corp.*,
634 F.2d 664 (2d Cir. 1980) ............................................................................ 23

*City of New York v. Blue Rage, Inc.*,
435 F. Supp. 3d 472 (E.D.N.Y. 2020) ............................................................. 12

*Conf. Mgmt. Corp. v. BMT Publ'ns., Inc.*,
No. 89 Civ. 7104 (MGC), 1991 WL 41637 (S.D.N.Y. Mar. 18, 1991) ........................19, 20

*DeFabio v. E. Hampton Union Free Sch. Dist.*,
623 F.3d 71 (2d Cir. 2010) ............................................................................. 11

*Green Thumb Lawn Care, Inc. v. Iwanowicz*,
107 A.D.3d 1402 (4th Dep't 2013) .................................................................. 19

*H.Daya Int'l Co. v. Arazi*,
348 F. Supp. 3d 304 (S.D.N.Y. 2018) .............................................................. 16

*Helton v. Avrio Grp. Surveillance Sols., Inc.*,
5 F. Supp. 3d 386 (W.D.N.Y. 2014) ................................................................ 13

*In re World Trade Ctr. Disaster Site Litig.*,
722 F.3d 483 (2d Cir. 2013) ............................................................................22, 23

*Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*,
98 A.D.3d 403 (2012), *aff'd*, 20 N.Y.3d 1082 (1st Dep't 2013) ......................... 17

*Kenford Co. v. County of Erie*,
67 N.Y.2d 257 (1986) .................................................................................... 14

*Myvett v. Rosato*,
   No. 03 Civ. 2379 LAP GWG, 2004 WL 1354254 (S.D.N.Y. June 16, 2004) ..................... 23

*Neighbors Organized to Save Amherst's Wetlands v. Acquest Wehrle, LLC*,
   No. 07-CV-297-JTC, 2011 WL 13359264 (W.D.N.Y. Oct. 20, 2011) ............................... 24

*Nike, Inc. v. Already, LLC*,
   663 F.3d 89 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013) ...................................................19, 20

*Oliver v. Sticht*,
   No. 14-CV-6087-CJS, 2017 WL 3621984 (W.D.N.Y. Aug. 23, 2017) ........................22, 23

*Peart v. City of New York*,
   992 F.2d 458 (2d Cir. 1993) ............................................................................................. 23

*Schurr v. Austin Galleries of Ill., Inc.*,
   719 F.2d 571 (2d Cir. 1983) ............................................................................................. 18

*Shannon v. GE*,
   186 F.3d 186 (2d Cir. 1999) ............................................................................................. 23

*Spirit Realty, L.P. v. GH & H Mableton, LLC*,
   227 F. Supp. 3d 291 (S.D.N.Y. 2017) .............................................................................. 19

*Staley v. Mika*,
   No. 1:08-CV-0305 GTS/RFT, 2010 WL 3907824 (N.D.N.Y. Sept. 29, 2010) ................... 24

*Stein v. N. Assur. Co. of Am.*,
   No. 09-CV-1029 TCP AKT, 2011 WL 1810320 (E.D.N.Y. May 9, 2011)....................14, 15

*U.S. Naval Inst. v. Charter Commc'ns., Inc.*,
   936 F.2d 692 (2d Cir.1991) .............................................................................................. 16

**RULES**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................... 9

Fed. R. Civ. P. 41(b).....................................................................................1, 2, 3, 21, 22, 24

Fed. R. Civ. P. 56 ...........................................................................................................1, 11

L.R. Civ. P. 41(b)............................................................................................................. 23

Defendant OHB System AG ("OHB"), by and through its undersigned counsel, Alston & Bird LLP, respectfully submits this Memorandum of Law in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, or, in the alternative, Motion to Dismiss For Failure to Prosecute pursuant to Rule 41(b) of the Federal Rule of Civil Procedure (the "Motion").[1]

## PRELIMINARY STATEMENT

At its core, this case is quite simple: OHB, a leading player in the aeronautics industry, contracted with ValveTech, Inc. ("ValveTech") to purchase certain valves for use in OHB's involvement in the European ExoMars Rover program. Unfortunately, the relationship between the parties deteriorated after ValveTech failed to supply fully functional valves as requested, and OHB ultimately had to make do with a "spare" valve that it bought from ValveTech. Despite the fact that OHB had purchased this "spare" valve from ValveTech for $8,636, ValveTech, nonetheless, brought this lawsuit demanding its return, claiming that OHB was in possession of ValveTech's "proprietary information" and seeking monetary damages. No evidence adduced during discovery supports ValveTech's allegations, and its claims must fail.

First, Count I of ValveTech's Amended Complaint for breach of contract fails because ValveTech has shown neither the requisite breach nor resultant damages, as required under New York law to state a claim for breach of contract. Moreover, ValveTech has failed to show that a meeting of the minds occurred between the parties as to one of its purported contracts, as this Court held would be required for ValveTech's claim as to that contract to survive a motion for summary judgment.

---

[1] All defined terms contained in the Statement of Material Facts ("SMF") simultaneously filed herewith shall apply to the instant Motion.

Second, Count II of ValveTech's Amended Complaint for declaratory judgment fails because ValveTech has failed to show a "controversy" as to the contract that ValveTech seeks to have declared invalid by this Court – namely, the Purchase Order and Invoice relating to Purchase Order No. 785. Here, there is no dispute that OHB ordered, received, and paid for the spare valve that was subject to Purchase Order No. 785. Because there is no controversy as to this issue, ValveTech's declaratory judgment claim also fails.

Third, Count III of ValveTech's Amended Complaint for replevin is deficient because for at least two reasons: (i) the evidence disclosed during discovery demonstrates that OHB purchased the valve it is seeking to have returned and therefore owned it at the time it was exported to Italy for insertion into the ExoMars Rover assembly, and (ii) even if *arguendo* that were not the case, ValveTech has failed to show that OHB could have had a separate export obligation that was breached as to the valve that ValveTech seeks returned.

For these reasons, and as set out in more detail below, summary judgment should be granted in OHB's favor as to all three claims.

In the alternative, this Court should dismiss this case due to ValveTech's utter failure to prosecute the action. As set forth in more detail below and in the accompanying Statement of Facts, ValveTech's counsel has gone totally silent for a period of over six months, during which time ValveTech has not conducted discovery or engaged with this case in any way. As such, ValveTech's claims against OHB should be dismissed pursuant to Rule 41(b).

## BACKGROUND FACTS

### The ExoMars Program

OHB is one of the leading space companies in Europe and specializes in high-tech solutions for space. (Dkt. No. 49 at p. 27, ¶ 9; SMF ¶ 1). These include low-orbiting and geostationary satellites for earth observation, navigation, telecommunications, science and space exploration as

well as systems for manned space flight, aerial reconnaissance and process control systems.  (*Id.*).
In or around 2008, OHB (initially through an entity with which it later merged, Kayser-Threde
GmbH) began collaborating with the European Space Agency ("ESA") and its other business
partner, Thales Alenia Space ("TAS"), for the production of the ExoMars Rover for use in ESA's
ExoMars program.  (Dkt. No. 49 at p. 27, ¶ 10; SMF ¶ 2).  The ExoMars program involves a
scientific exploration of the planet Mars that has been undertaken by ESA in cooperation with the
Russian Space Agency ("Roscosmos") and the U.S. National Aeronautics and Space
Administration ("NASA").  (Dkt. No. 49 at p. 27, ¶ 11; SMF ¶ 3).  The primary goal of the
ExoMars program is to address the question of whether life ever existed on Mars.  (Dkt. No. 49 at
p. 27, ¶ 12; SMF ¶ 4).

OHB's responsibilities within the ExoMars program included developing several
components of the ExoMars Rover.  (Dkt. No. 49 at p. 28, ¶ 15; SMF ¶ 5).  The ExoMars Rover
was initially expected to launch in July 2020.  (Dkt. No. 49 at p. 28, ¶ 14; SMF ¶ 6).  To meet the
goal of launching the ExoMars Rover by July 2020, OHB was expected to work under tight
timeframes to ensure that the ExoMars Rover was fully constructed and subject to numerous tests
to ensure that it could withstand the launch and surface conditions on Mars.  (Dkt. No. 49 at p. 28,
¶ 16; SMF ¶ 7).

***OHB's Relationship And Non-Disclosure Agreements With ValveTech***

As part of its responsibilities to create instruments and specifications for the ExoMars
Rover, OHB (initially through Kayser-Threde GmbH), began discussions about cooperating to
develop a pressure relief valve with ValveTech, a supplier of custom valves and related systems
that is located in Phelps, New York.  (Dkt. No. 9 at p. 2, ¶ 9; Dkt. No. 49 at p. 29, ¶ 22; SMF ¶ 8).
On December 10, 2013, ValveTech sent OHB a quotation for three valves – a qualification valve,

flight valve, and spare valve – and confirmed that ValveTech would also provide OHB with a fourth development unit valve at no cost on which to conduct initial testing.  (SMF ¶ 9, Ex. A).

In furtherance of their relationship, on or about November 21, 2014, OHB and ValveTech entered into a Non-Disclosure and Proprietary Rights Agreement ("2014 NDA").  (Dkt. No. 9 at p. 3, ¶ 14; SMF ¶ 10, Ex. B).

The 2014 NDA was superseded in the summer of 2016, when OHB and ValveTech executed a Non-Disclosure and Proprietary Rights Agreement ("2016 NDA") in connection with the ExoMars program.  (Dkt. No. 9 at p. 4, ¶ 18; SMF ¶ 11, Ex. C).  Although it was named as a party to the 2016 NDA, TAS did not execute the agreement, rendering it operative only as to OHB and ValveTech. (*Id.*)

In the spring of 2018, ValveTech and OHB entered into a 2018 Non-Disclosure and Proprietary Rights Agreement (the "2018 NDA") in order to exchange certain "Proprietary Information" for the purpose of evaluating a possible business arrangement between them related to the purchase and sale of certain products designed and manufactured by ValveTech.  (Dkt. No. 9 at pp. 5-6, ¶ 28; SMF ¶ 12, Ex. D).  TAS and OHB executed a separate non-disclosure agreement on or around July 11, 2018 in connection with the materials to be supplied by ValveTech for purposes of the ExoMars Rover.  (SMF ¶ 14, Ex. E).

***Purchase Order No. 225***

On or around September 8, 2015, OHB sent ValveTech a Purchase Order numbered 4552225 ("Purchase Order No. 225") regarding the development valve that ValveTech had previously agreed to send to OHB free of charge in its December 10, 2013 quotation to OHB. (Dkt. No. 49 at p. 30, ¶ 33; SMF ¶ 15, Exs. A & F).  Pursuant to Purchase Order No. 225, ValveTech agreed to provide OHB with the development valve for a period of six months, after

which time the development valve was to be returned to ValveTech. (Dkt. No. 49 at p. 30, ¶ 34; SMF ¶ 16, Ex. F). Further, pursuant to the terms of Purchase Order No. 225, if OHB subsequently placed a purchase order with ValveTech to deliver a qualification valve, OHB was under no obligation to return the development valve to ValveTech. (Dkt. No. 49 at p. 30, ¶ 35; SMF ¶ 17, Ex. F).

On September 21, 2015, ValveTech shipped the development valve to OHB pursuant to Purchase Order No. 225, so that OHB could determine the appropriate sizing of the valves and continue its efforts to develop certain specifications for its use in the ExoMars program. (Dkt. No. 9 at p. 9, ¶ 51; Dkt. No. 49 at p. 31, ¶ 36; SMF ¶ 18). The development valve, however, malfunctioned during the thermal cycling test. (Dkt. No. 9 at p. 9, ¶ 52; Dkt. No. 49 at p. 31, ¶ 37; SMF ¶ 19). The valve started to degrade, which caused a violation of the technical requirements for pressure and flow rate. (*Id.*). Because the development valve malfunctioned, OHB returned it to ValveTech for repairs on or around April 20, 2016. (Dkt. No. 49 at p. 31, ¶¶ 38-39; SMF ¶ 20).

***Purchase Order No. 785***

In need of valves for additional testing and for ultimate use in the ExoMars Rover, on or around November 13, 2015, OHB sent ValveTech a Purchase Order numbered 4552785 ("Purchase Order No. 785") requesting the additional three valves for the ExoMars project which ValveTech had previously agreed to provide OHB – the qualification valve, flight valve, and spare valve. (Dkt. No. 49 at p. 31, ¶ 42; SMF ¶ 21, Ex. G). OHB agreed to pay ValveTech $8,636 for each of these three valves. (Dkt. No. 49 at p. 31, ¶ 43; SMF ¶ 22, Ex. G). On July 25, 2018, OHB and ValveTech had a meeting to discuss the valve testing process, which was memorialized in written meeting minutes. (SMF ¶ 23, Ex. H).

ValveTech subsequently shipped OHB only the spare valve purchased and invoiced pursuant to Purchase Order No. 785 on or about August 1, 2018. (Dkt. No. 9 at p. 10, ¶ 61; Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 24). On September 11, 2018, OHB paid ValveTech the contractually-agreed upon amount for the spare valve, $8,636 – the invoiced amount of Purchase Order No. 785. (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 25, Exs. I & J). ValveTech received payment without issue. (*Id.*) Along with the spare valve, ValveTech included a "Packing List" which referenced the Purchase Order number (4552785). (Dkt. No. 49 at p. 32, ¶ 45; SMF ¶ 26, Ex. K). This "Packing List" contained no obligation by OHB to return the spare valve to ValveTech. (*Id.*) ValveTech also included a "Certificate of Conformance" which stated that "all programs, proposals, bilateral efforts, transactions and agreements between the parties hereto are subject to the terms contained in the ValveTech, Inc., Terms & Conditions . . . located at www.valvetech.net [and] are incorporated into this transaction as if fully set forth herein." (Dkt. No. 9 at pp. 10-11, ¶¶ 61, 66-67; SMF ¶ 27, Exs. L & Z). The referenced Terms & Conditions (the "Terms and Conditions") were not otherwise transmitted to OHB. (*Id.*)

Although ValveTech shipped OHB the spare valve, ValveTech never shipped OHB either the flight valve or the qualification valve, both of which were subject to Purchase Order No. 785. (Dkt. No. 49 at p. 32, ¶ 49; SMF ¶ 28). OHB repeatedly requested that ValveTech provide it with the remaining valves it had agreed to provide pursuant to Purchase Order No. 785; however, ValveTech never shipped OHB either the flight valve or the qualification valve. (Dkt. No. 49 at p. 33, ¶ 51; SMF ¶ 29).

***Purchase Order No. 786***

On that same day, ValveTech shipped the component parts of an unassembled valve to OHB, pursuant to a separate May 15, 2018 Purchase Order numbered 4567786 ("Purchase Order

No. 786"), with a separate Packing List that referenced Purchase Order No. 786.  (Dkt. No. 49 at p. 32, ¶ 46; SMF ¶ 30, Exs. M & N).  ValveTech shipped these component parts to OHB for the purposes of conducting a "bakeout" in which OHB would sterilize the component parts and then re-ship them to ValveTech for construction.  (Dkt. No. 49 at p. 32, ¶ 47; SMF ¶ 31).  These component parts were related to an additional valve to be assembled and tested by ValveTech following successful testing of the qualification valve that ValveTech had agreed to send OHB.  (Dkt. No. 49 at p. 32, ¶ 48; SMF ¶ 32).  Importantly, these component parts were **_not_** referenced in Purchase Order No. 785.  (Dkt. No. 49 at p. 32, ¶ 48; SMF ¶ 33, Ex. G).  These component parts were, ultimately, never utilized in the bakeout process and currently remain, unused, with OHB.  (Dkt. No. 49 at p. 32, ¶ 48; SMF ¶ 34).

### The Exportation Of The Spare Valve

OHB subsequently re-exported the spare valve purchased in connection with Purchase Order No. 785 to TAS in Italy in September 2018 for sterilization and integration into a pressure control system on the ExoMars Rover.  (Dkt. No. 9 at p. 13, ¶ 72; SMF ¶ 35).  Specifically, the spare valve arrived at OHB at Weßling on August 8, 2018.  (SMF ¶ 36, Ex. O at p. 3-4).  Shortly thereafter, the valve was inspected and tested as part of a bakeout process.  (*Id.*)  Both of these activities took place at OHB's offices located at Weßling.  (*Id.*)  The valve was later packed in a sealed transport coffer and on September 3, 2018, was personally transported to TAS, located at 253, Strada Antica di Collegno, 10146 Torino, Italy.  (SMF ¶ 37, Ex. O at p. 3-4).  OHB received confirmation that the valve was received by TAS via personal delivery at the above address on September 4, 2018.  (SMF ¶ 38, Ex. O at p. 3-4).  After that, the valve was integrated in the Analytical Laboratory Drawer (ALD) Structure of the ExoMars Rover.  (SMF ¶ 39, Ex. O at p. 3-4).

On September 26, 2018, OHB submitted a Voluntary Self-Disclosure to the United States Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE") confirming that it had exported the spare valve to TAS. (SMF ¶ 40, Ex. P). On June 18, 2019, the BIS issued a warning letter confirming that "based upon the facts and circumstances known to OEE at this time, OEE has decided not to refer this matter for criminal or administrative prosecution and is closing this matter with the issuance of this Warning Letter." (SMF ¶ 41, Ex. P).

In short, the following valves and parts were exchanged between OHB and ValveTech:

1. The development valve, shipped to OHB on or around September 21, 2015, pursuant to Purchase Order No. 225. The development valve was returned to ValveTech on or around April 20, 2016.

2. The spare valve, shipped to OHB on or around August 1, 2018, pursuant to Purchase Order No. 785, which had its own Packing List and invoice and for which OHB paid $8,636. The spare valve was subsequently installed into the ExoMars Rover and remains in the ExoMars Rover, unable to be removed.

3. The bakeout parts, shipped to OHB on or around August 1, 2018, pursuant to Purchase Order No. 786, which had a separate Packing List and a commercial invoice. The bakeout parts were unused by OHB and remain in their packaging at OHB in Germany.

(Dkt. No. 49 at p. 33, ¶ 52; SMF ¶ 42, Exs. F, G, I, J, K, M, & N).

The qualification valve and relief valve ordered by OHB pursuant to Purchase Order No. 785, however, have never been delivered by ValveTech to OHB. (Dkt. No. 49 at p. 33, ¶ 51; SMF ¶ 43).

## PROCEDURAL HISTORY

On February 21, 2019, ValveTech commenced this action by filing a Complaint in the New York State Supreme Court (Monroe County). (Dkt. No. 1, Exhibit B; SMF ¶ 44). In its Complaint, ValveTech asserted three separate claims: (1) breach of contract based on various purported agreements between the parties, (2) declaratory judgment seeking to declare Purchase Order No. 785 invalid, and (3) replevin seeking to have the spare valve returned to it. (*Id.*).

On November 8, 2019, OHB properly removed this action from the New York State Supreme Court (Monroe County) to the Western District of New York on the basis of diversity of citizenship jurisdiction. (Dkt. No. 1; SMF ¶ 45). On November 15, 2019, OHB partially moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. (Dkt. No. 5; SMF ¶ 46). In response, on December 3, 2019, ValveTech filed an Amended Complaint, rendering the original Complaint moot. (Dkt. No. 9; SMF ¶ 47). At the same time, ValveTech filed a separate motion to remand this case to the New York Supreme Court (Monroe County) (the "Remand Motion"). (Dkt. No. 10; SMF ¶ 48).

On January 8, 2020, OHB partially moved to dismiss the Amended Complaint as to ValveTech's breach of contract and replevin claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. (Dkt. No. 15; SMF ¶ 49). OHB also opposed ValveTech's Remand Motion, arguing that, under the 2018 NDA, it had appropriate grounds for removal to the Western District of New York. (*Id.*)

On January 22, 2020, the parties appeared before the Court to discuss discovery and other scheduling matters. (Dkt. No. 26; SMF ¶ 50). At this conference, the Court stayed electronic discovery until it issued a decision on the two pending motions. (SMF ¶ 51, Ex. Q at p. 21, ¶ 6). On February 28, 2020, the parties served Requests for Production and Interrogatories. (SMF ¶ 52, Exs. R, S, T, & U). OHB served its objections and responses on March 30, 2020, while ValveTech did not serve its objections and responses until May 7, 2020, and served supplemental responses on December 7, 2020. (SMF ¶ 53, Exs. O, Q, V, W, & X). On November 12, 2020, the parties had a conference before Magistrate Judge Pedersen to discuss mediation. (Dkt. No. 44; SMF ¶ 54). The Court did not lift the stay on electronic discovery, but the parties agreed to meet and

9

confer to discuss producing narrow categories of documents that would be useful for purposes of the mediation. (SMF ¶ 55, Ex. Y). On November 24, 2020, the parties appeared again before Magistrate Judge Pedersen to discuss the matter further, and the Court ordered the parties to proceed with producing limited discovery for purposes of the mediation. (Dkt. Nos. 45 & 46; SMF ¶ 56). OHB ultimately produced 64 documents, while ValveTech produced 67 documents. The court-ordered stay on conducting full electronic discovery remained in place while the Court's decision on the motion to dismiss and motion to remand remained pending. (Dkt. No. 45; SMF ¶ 57).

On December 17, 2020, the Court partially granted OHB's pending motion and dismissed ValveTech's breach of contract claims as to two purported agreements (the STA Statement and the End-Use Statement), finding that neither one constituted a contract. (Dkt. No. 47; SMF ¶ 58). The Court further denied ValveTech's Remand Motion. (*Id.*)

The parties engaged in an all-day mediation on January 12, 2021. (Dkt. No. 48; SMF ¶ 59). The mediation proved unsuccessful. (*Id.*).

OHB filed its answer on January 15, 2021, and further asserted counterclaims against ValveTech for (1) tortious interference with OHB's contract with TAS, (2) tortious interference with OHB's business relations with TAS and with ESA, (3) breach of contract with OHB pursuant to Purchase Order No. 785 for failing to ship the flight valve and qualification valve, and (4) promissory estoppel. (Dkt. No. 49; SMF ¶ 60). ValveTech filed its answer to OHB's counterclaims on February 5, 2021. (Dkt. No. 54; SMF ¶ 61).

The parties appeared before Magistrate Judge Pedersen on January 21, 2021 to discuss scheduling. (Dkt. No. 53; SMF ¶ 62). The Court entered a scheduling order whereby fact discovery closed on September 17, 2021, and expert discovery closed on December 17, 2021.

(Dkt. No. 60; SMF ¶ 63).  Thereafter, the parties agreed upon a Stipulation and Proposed Discovery Order, which was filed with the Court on March 12, 2021, and entered by the Court on March 19, 2021.  (Dkt. No. 57; SMF ¶ 64).  Following negotiations and entry of the discovery protocol, counsel for OHB did not hear from ValveTech's counsel again until four months later, on July 15, 2021, at which time ValveTech's counsel indicated that they intended to discuss the status of the case and the discovery process further in a subsequent conversation.  (SMF ¶ 65, Penaro Decl. ¶¶ 3-5).  ValveTech's counsel, however, did not subsequently communicate with OHB's counsel for a period of over seven months, until, on February 23, 2022, ValveTech's counsel requested an extension of all deadlines in this action.  (SMF ¶ 66, Penaro Decl. ¶ 6).  Nor has ValveTech made any filings in this action since July 19, 2021.  (SMF ¶ 67, Penaro Decl. ¶ 7).

## MOTION FOR SUMMARY JUDGMENT

### LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine only when a reasonable jury could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Similarly, a fact is material only where it would affect the outcome of the suit.  *Id.*  Once the moving party has met its burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.*  "[T]he mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party."  *DeFabio v. E. Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation."  *Id.*  Moreover, "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with

11

respect to other elements become immaterial and cannot defeat a motion for summary judgment."

*Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011).

**ARGUMENT**

**I.      Summary Judgment Is Warranted Based On The Record Evidence**

Based on the record evidence adduced during the discovery period, the uncontroverted evidence is clear that summary judgment is warranted on ValveTech's three remaining claims for breach of contract (Count I), declaratory judgment (Count II), and replevin (Count III).   *See Chandok*, 632 F.3d at 812 (summary judgment should be granted "[w]here the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim"); *see also City of New York v. Blue Rage, Inc.*, 435 F. Supp. 3d 472, 484 (E.D.N.Y. 2020) ("[S]ummary judgment is appropriate when the non-moving party has failed to make a sufficient showing on an essential element for which it bears the burden of proof.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

**A.      Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Breach Of Contract Claim.**

**(1) *OHB Did Not Breach Any Confidentiality Obligations To ValveTech Under The NDAs.***

ValveTech alleges that OHB breached a variety of contractual obligations relating to ValveTech's purported proprietary information pursuant to the various NDAs between the parties. (Dkt. No. 9 at pp. 14-18, ¶¶ 84-113).  However, ValveTech's breach of contract claim fails in the first instance because ValveTech has failed to show a breach of any such contractual obligations.

"Under New York law, the elements of a breach of contract claim include (1) the existence of a contract; (2) performance of the contract by one party; (3) breach of the contract by the other

12

party; (4) resulting in damages." *Helton v. Avrio Grp. Surveillance Sols., Inc.*, 5 F. Supp. 3d 386, 409 (W.D.N.Y. 2014) (citation omitted).[2]

ValveTech's claim that OHB breached its confidentiality obligations is rooted in the argument that OHB improperly exported ValveTech's purportedly "confidential information" to TAS in Italy. (Dkt. No. 9 at p. 14, ¶¶ 85-86). However, the uncontroverted evidence makes clear that OHB did not turn over any confidential technical information to TAS in connection with the transfer or the sterilization of the valve. Per OHB's unrebutted, sworn testimony, OHB personnel personally transported the valve it purchased from ValveTech (pursuant to Purchase Order No. 785) to Italy, oversaw the sterilization process at TAS, and then inserted the valve into the ExoMars Rover assembly. (SMF ¶¶ 36-39, Ex. O at p. 3-4). Quite simply, no "confidential information" was improperly disclosed to TAS during this process. (*Id.*) And no party to this action has produced any evidence to the contrary. Moreover, even if any confidential or technical information had been disclosed to TAS (and it was not), TAS was also bound to maintain that information as confidential pursuant to its separate agreement with OHB.[3] (SMF ¶ 14, Ex. E). And, finally, of course, by the time the valve was implemented into the ExoMars Rover assembly, it was owned by OHB.

As a result, any technical information relating to the valve belonged to OHB, as the valve had been purchased by OHB and had been made to its specifications. Indeed, OHB *paid* ValveTech for the valves, at a price of $8,636 per valve. (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 25,

---

[2] The 2018 NDA specifies that it "shall be governed by, interpreted and enforced in accordance with the laws of the United States of America and the State of New York . . . ." (SMF ¶ 13, Ex. D at ¶ 7.1).

[3] Despite having had a lengthy discovery period, ValveTech took no depositions and took no third-party discovery, including any discovery from TAS regarding any issue in this case.

Exs. I & J).  OHB sent ValveTech Purchase Order No. 785 for the valves, (Dkt. No. 49 at p. 31, ¶ 42; SMF ¶ 21, Ex. G), and OHB subsequently wired to ValveTech the amounts owed for the valve under the purchase order, (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 25, Exs. I & J).  ValveTech thereafter accepted payment without issue.  (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶¶ 25 & 53, Exs. I & J, Ex. X at Nos. 8, 14). Nor is there any support in any of the various agreements between the parties for ValveTech's repeated allegations that all confidential information would remain ValveTech's property.  (SMF ¶¶ 10-12, Exs. B, C, & D).  As such, because ValveTech has failed to show that OHB breached any agreement between the parties, ValveTech's claim for breach of contract fails in the first instance.

### *(2) ValveTech Has Not Shown Resultant Damages.*

ValveTech's breach of contract claim fails for the additional reason that ValveTech cannot show any damages whatsoever, let alone any damages that flow from any purported breach. "[D]amages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *24/7 Records, Inc. v. Sony Music Ent., Inc.*, 566 F. Supp. 2d 305, 316 (S.D.N.Y. 2008) (alteration in original) (quoting *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986)); *see also Stein v. N. Assur. Co. of Am.*, No. 09-CV-1029 TCP AKT, 2011 WL 1810320, at *5 (E.D.N.Y. May 9, 2011) ("A plaintiff has the burden of proving damages with reasonable certainty.  Damages 'may not be speculative, but must be directly traceable to the defendants' alleged wrongdoing.'") (citations omitted).

First, ValveTech alleges it has been damaged because "[t]he contract amount Defendant failed to pay is $34,143.60." (Dkt. No. 9 at p. 20, ¶ 128(a)).  However, allegations of this purported contract and the amount purportedly owing are nowhere to be found in the Amended Complaint. Furthermore, despite targeted discovery requests from OHB aimed at uncovering any evidence

regarding this purported contract and resultant damages amount, ValveTech failed to produce a copy of this purported agreement to OHB or any evidence showing such an amount in purported damages. (SMF ¶ 53, Ex. W at No. 12). Nor do any of the various NDAs or the Terms and Conditions (the only contracts pursuant to which ValveTech has asserted its breach of contract claim following dismissal of its claims under the STA Statement and End-Use Statement) indicate any amount owing. (SMF ¶¶ 10-12 & 27, Exs. B, C, D, & Z).

Second, ValveTech alleges that it has been damaged because "[t]he research and development cost of the valve is $1 million and remains unpaid." (Dkt. No. 9 at p. 20, ¶ 128(b)). ValveTech bases this category of damages on a July 25, 2018 meeting between the parties in which OHB purportedly agreed to pay these costs, as "evidenced by the executed minutes of [the] meeting." (*Id.* at p. 9, ¶¶ 54-55). This assertion, however, is expressly contradicted by the July 25, 2018 meeting minutes themselves, which are silent as to any obligation by OHB to pay ValveTech costs associated with developing the spare valve. Indeed, a mere cursory review of the meeting minutes themselves makes that clear. (SMF ¶ 23, Ex. H). Nor has ValveTech produced any information showing that there was such an obligation. (SMF ¶ 53, Ex. W at No. 12).

Third, ValveTech claims that it has been damaged because "[t]he cost of the proprietary information for the valve is $4 million." (Dkt. No. 9 at p. 20, ¶ 128(c)). This claim similarly lacks any merit whatsoever. First, as discussed *supra*, OHB *paid* ValveTech for the valve, at an agreed price of $8,636. (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 25, Exs. I & J). Even putting aside the fact that ValveTech accepted payment from OHB for the valve (money that it has never returned to OHB), it is simply nonsensical for ValveTech to allege that OHB owes ValveTech damages for the underlying proprietary information for the valves just because OHB purchased the valves themselves. Nor has ValveTech produced any document proving research and development costs

of the valve, let alone a $4 million figure, despite requests from OHB's counsel.  (SMF ¶ 53, Ex. W at No. 12).

Fourth, ValveTech's alleged damages of "[a]ttorney's fees of $29,083.49 and ongoing," (Dkt. No. 9 at p. 20, ¶ 128(d)), are simply not resultant damages and are not recoverable.  Under New York law, attorneys' fees are not recoverable in a breach of contract action.  *U.S. Naval Inst. v. Charter Commc'ns., Inc.*, 936 F.2d 692, 698 (2d Cir.1991) ("There is no . . . right to an award of attorney's fees on an ordinary claim of breach of contract."); *see also H.Daya Int'l Co. v. Arazi*, 348 F. Supp. 3d 304, 312 (S.D.N.Y. 2018) (same).  Because there is no ordinary right to attorneys' fees under New York law, this category of damages similarly fails.[4]

Lastly, ValveTech alleges a catchall "other" category of damages "including, but not limited to and possibly subject to expert disclosure: loss of future sales; expenses to evaluate and ameliorate the ramifications of OHB's export violation for which OHB is liable; competition with [TAS] and expenses incurred as a result of them possessing the valve and possibly reverse engineering it; and damages incurred as a result of the improperly functioning valve being installed on the Mars Rover."  (Dkt. No. 9 at p. 20, ¶ 128(e)).  This "kitchen sink" approach to damages also fails for being vague, conclusory, and entirely speculative in nature.  *See Broughel v. Battery Conservancy*, No. 07 CV 7755 (GBD), 2010 WL 1028171, at *5 (S.D.N.Y. Mar. 16, 2010) (allegations for damages for breach of contract were insufficient where references to "examples of damages resulting from the alleged breach" such as "injury to [plaintiff's] reputation and loss of income" were "vague and ambiguous").  Nor has ValveTech produced any discovery proving these

---

[4] While the 2014 NDA does provide for attorneys' fees, this category of damages fails for the additional reason that OHB has not breached that agreement, as discussed *supra*, as is required under the provisions of the 2014 NDA for an award of attorneys' fees.  (SMF ¶ 10, Ex. B at p. 3, ¶ 9).

"other" damages.  (SMF ¶ 53, Ex. W at No. 12).  And there is no factual basis for any so-called "other" damages where, as here, a purchaser simply ordered, paid for, received, and then used the purchased product.

### (3) OHB Did Not Breach The Terms And Conditions.

In its Amended Complaint, ValveTech alleges that OHB breached the Terms and Conditions referenced on the Certificate of Conformance that accompanied Purchase Order No. 785 through export of the valve to TAS in Italy.  (Dkt. No. 9 at p. 12, ¶ 71; pp. 19-20, ¶¶ 125-27). Although OHB argued in its motion to dismiss, (Dkt. No. 15), that the Terms and Conditions did not constitute a valid contract because there was no meeting of the minds between OHB and ValveTech, the Court held that the issue presented questions of fact that could not be resolved on OHB's motion to dismiss and was "more appropriately answered at the summary judgment stage," (Dkt. No. 47 at p. 12).  Since ValveTech has failed to, subsequently, produce any evidence of a meeting of the minds during the discovery process, OHB renews the argument it made in its motion to dismiss.  (Dkt. No. 15 at p. 14-17).[5]

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound."  *Kasowitz, Benson, Torres & Friedman, LLP v. Duane Reade*, 98 A.D.3d 403, 404 (2012) (citation omitted), *aff'd*, 20 N.Y.3d 1082 (1st Dep't 2013).  "Under New York contract law, the fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract.  This is because an enforceable contract requires

---

[5] Summary judgment is also warranted as to ValveTech's claim for breach of the Terms and Conditions because this claim is premised on OHB's purported breach of export regulations.  (Dkt. No. 9 at p. 12, ¶ 71; p. 19-20, ¶¶ 125-27).  As discussed in greater detail *infra* (in Section I.C), there has been no evidence adduced showing that OHB breached any such regulations.

mutual assent to the essential terms and conditions thereof." *Schurr v. Austin Galleries of Ill., Inc.*, 719 F.2d 571, 576 (2d Cir. 1983) (citations omitted).

Here, there has been no evidence of a meeting of the minds as to the Terms and Conditions adduced through discovery. There has been no evidence to suggest that OHB reviewed and agreed to the Terms and Conditions. Critically, as ValveTech itself admits, the Terms and Conditions were provided to OHB only *after* it had agreed to receive the replacement valve; OHB did not have an opportunity to review the Terms and Conditions prior to receipt of the valve. (Dkt. No. 9 at p. 11 ¶¶ 65-68; SMF ¶ 27). Moreover, the Terms and Conditions themselves were not provided to OHB; rather, OHB was sent a "Certificate of Conformance" on a "Packing List" that directed OHB not to any particular webpage containing the Terms and Conditions, but rather to ValveTech's main website, www.valvetech.net. (Dkt. No. 9, pp. 10-11, ¶¶ 61, 66-67; SMF ¶ 27, Ex. L). As such, because there is no evidence of a meeting of the minds, as the Court stated would be required, ValveTech's breach claim as to the Terms and Conditions must be dismissed.[6]

### B.    Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Declaratory Judgment Claim.

In its second cause of action, ValveTech alleges that the Court should grant a declaratory judgment that Purchase Order No. 785 was not a binding contract on ValveTech as a matter of law. (Dkt. No. 9 at pp. 20-21, ¶¶ 130-38). ValveTech presumably seeks such a declaratory judgment as it never shipped OHB either the flight valve or the qualification valve that it had ordered pursuant to Purchase Order No. 785. (Dkt. No. 49 at p. 32, ¶ 49; SMF ¶ 28). However,

---

[6] The Terms and Conditions also provide further evidence that OHB did not breach any confidentiality obligations to ValveTech through use of the spare valve in the ExoMars Rover. Terms and Condition No. 3 provides that title to the "Product" (here, the spare valve) passed to OHB upon acceptance testing; Purchase Order No. 785 provided for such acceptance testing. (SMF ¶¶ 21 & 27, Exs. G & Z). Moreover, Terms and Condition No. 11 specifically provided OHB with a "Limited Intellectual Property License" for OHB's use of the spare valve in the ExoMars Rover, which was specifically referenced on Purchase Order No. 785. (*Id.*)

18

ValveTech's claim for declaratory judgment fails because there is no controversy as to whether Purchase Order No. 785 constituted a valid contract between the parties.

"Declaratory relief is available as a remedy only if an 'actual controversy' exists between the parties. . . .  The determinative issue is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Spirit Realty, L.P. v. GH & H Mableton, LLC*, 227 F. Supp. 3d 291, 296-97 (S.D.N.Y. 2017) (citations omitted). "Because there is no controversy between the parties, th[e] Court does not have the power to issue a declaratory judgment."  *Id.* at 298; *see also Green Thumb Lawn Care, Inc. v. Iwanowicz*, 107 A.D.3d 1402, 1405 (4th Dep't 2013) ("A declaratory judgment action thus requires an actual controversy between genuine disputants with a stake in the outcome . . . .") (citations and internal quotation marks omitted).  Where the party seeking a declaratory judgment has not presented evidence demonstrating a controversy, a court should not uphold the claim.  *See Conf. Mgmt. Corp. v. BMT Publ'ns., Inc.*, No. 89 Civ. 7104 (MGC), 1991 WL 41637, at *3 (S.D.N.Y. Mar. 18, 1991) (dismissing claim for declaratory judgment where Plaintiff failed to submit any evidence suggesting a controversy existed); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 97 & n.5 (2d Cir. 2011) (denying claim for declaratory judgment "given the absence of record evidence" indicating a controversy existed as to the claim), *aff'd*, 568 U.S. 85 (2013).

Here, ValveTech's claim for declaratory judgment fails because there is simply no controversy between the parties as to whether Purchase Order No. 785 constituted a contract.  The record evidence is clear that on or around November 13, 2015, OHB sent ValveTech Purchase Order No. 785 requesting the qualification valve, flight valve, and spare valve.  (Dkt. No. 49 at p. 31, ¶ 42; SMF ¶ 21, Ex. G).  There is no dispute that OHB agreed to pay ValveTech $8,636 for

each of these three valves.  (Dkt. No. 49 at p. 31, ¶ 43; SMF ¶ 22, Ex. G).  There is no dispute that ValveTech subsequently shipped OHB the spare valve purchased and invoiced pursuant to Purchase Order No. 785 on or about August 1, 2018.  (Dkt. No. 9 at p. 10, ¶ 61; Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 24).  And there is no dispute that OHB paid ValveTech the contractually agreed upon amount for that valve, $8,636, the invoiced amount of Purchase Order No. 785, which was accepted and retained by ValveTech.  (Dkt. No. 49 at p. 32, ¶ 44; SMF ¶ 25, Exs. I & J).  Because there is no live "controversy" as to whether Purchase Order No. 785 constituted a contract, ValveTech's declaratory judgment claim must fail.  *See Conf. Mgmt. Corp.*, 1991 WL 41637, at *3; *Nike, Inc.*, 663 F.3d at 97 n.5.

## C.   Summary Judgment Should Be Granted In OHB's Favor On ValveTech's Replevin Claim.

With respect to its third cause of action, ValveTech asserts a claim for replevin seeking the return of its so-called "Proprietary Information" shipped to OHB on or around August 1, 2018 and installed in the ExoMars Rover.  (Dkt. No. 9 at p. 22, ¶¶ 140-143).  This claim is also wholly lacking in merit.  As demonstrated above, by the time the valve in question (purchased pursuant to Purchase Order No. 785) was installed in the ExoMars Rover, it belonged to OHB as it had already been paid for.  As such, ValveTech no longer had any residual security or ownership interest in the valve.

However, even if *arguendo* that were not the case, as the Court held in its December 17, 2020 decision partially granting OHB's motion to dismiss, ValveTech's replevin claim can only succeed to the extent that return of the "Proprietary Information" would serve ValveTech's interest in continued compliance with the Export Administration Regulations ("EAR"), separate from OHB's obligations as to ValveTech's purportedly "Proprietary Information" under the terms of

the NDAs between the parties.[7]  (Dkt. No. 47 at p. 16).  Because ValveTech has provided no such evidence (and it cannot as it already sold the valve in question), ValveTech's claim for replevin must fail.

In any event, in connection with the export of the valve at issue, on September 26, 2018, OHB submitted a Voluntary Self-Disclosure to the BIS confirming that it had exported the valve to TAS.  (SMF ¶ 40, Ex. P).  On June 18, 2019, the BIS issued a warning letter confirming that "based upon the facts and circumstances known to OEE at this time, OEE has decided not to refer this matter for criminal or administrative prosecution and is closing this matter with the issuance of this Warning Letter."  (SMF ¶ 41, Ex. P).  OHB, therefore, received approval from BIS for the valve to remain and continue to be utilized in Italy as part of the ExoMars program.   (*Id.*) Accordingly, OHB is under no independent duty to return the valve to ValveTech in the United States and ValveTech has not produced any evidence evincing some such duty, despite requests to do so.  (SMF ¶ 52, Ex. R).

In light of the foregoing, ValveTech's replevin claim must be dismissed.

## MOTION, IN THE ALTERNATIVE, FOR DISMISSAL FOR FAILURE TO PROSECUTE

### LEGAL STANDARD

In the alternative, ValveTech's remaining claims should be dismissed pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.  Under Rule 41(b), "a defendant may move to dismiss the action or any claim against it" when "the plaintiff fails to prosecute or to comply with these rules or a court order."  This Court has repeatedly explained that "[d]ismissal is warranted under Rule 41(b) where the record demonstrates a lack of due diligence by a plaintiff in

---

[7] The Court based this decision, in part, on OHB's arguments that no independent duty to return ValveTech's purportedly "Proprietary Information" existed outside the 2018 NDA and, as such, the replevin claim was duplicative and must be dismissed.  (Dkt. No. 15 at pp. 17-18).

the prosecution of his lawsuit." *Oliver v. Sticht*, No. 14-CV-6087-CJS, 2017 WL 3621984, at *2

(W.D.N.Y. Aug. 23, 2017) (Siragusa, J.).  In evaluating a motion under Rule 41(b), courts in the

Second Circuit also consider whether:

> (1) the plaintiff's failure to prosecute caused a delay of significant duration; (2)
> plaintiff was given notice that further delay would result in dismissal; (3) defendant
> was likely to be prejudiced by further delay; (4) the need to alleviate court calendar
> congestion was carefully balanced against plaintiff's right to an opportunity for a
> day in court; and (5) the trial court adequately assessed the efficacy of lesser
> sanctions.

*In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 486 (2d Cir. 2013).  No one factor is

dispositive, and the decision to dismiss the plaintiff's claims is discretionary.  *Id.*

## ARGUMENT

**I.    ValveTech Has Failed To Prosecute This Action, As A Result of Which, It Must Be Dismissed.**

ValveTech has failed to demonstrate *any* due diligence in prosecuting its claims against

OHB and this lack of diligence has resulted in a significant delay.  In the eleven months since the

stipulated discovery order was entered on March 19, 2021, counsel for ValveTech communicated

with counsel for OHB only twice – one non-substantive phone call more than six months ago, and

one belated email correspondence over five months after the close of fact discovery and only two

days before the deadline for filing dispositive motions, clearly intended to stave off this very

Motion.  (SMF ¶¶ 65-66, Penaro Decl. ¶¶ 3-6).  During this period, counsel for ValveTech made

no other efforts to initiate or further participate in discovery.  (*Id.*)  Even after the deadlines for

fact and expert discovery expired on September 17, 2021 and December 17, 2021, respectively,

ValveTech took no action.  (Dkt. No. 60; SMF ¶¶ 65-67, Penaro Decl. ¶¶ 3-7).  Given ValveTech's

failure to take meaningful action to prosecute its claims for more than eleven months or comply

with court-ordered discovery deadlines, this Court should dismiss ValveTech' claims under Rule

41(b) with prejudice. *See Oliver*, 2017 WL 3621984, at *2 ("[C]ourts have frequently found dismissal of a complaint justified when the plaintiff fails to take any specific or concrete actions over a substantial length of time."); *see also Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666-68 (2d Cir. 1980) (affirming dismissal where plaintiff failed to complete court-ordered discovery within six months); *Myvett v. Rosato*, No. 03 Civ. 2379 LAP GWG, 2004 WL 1354254, at *2 (S.D.N.Y. June 16, 2004) ("That nearly a year has elapsed since [the plaintiff] took any steps to prosecute this case . . . strongly counsels in favor of dismissal."); L.R. Civ. P. 41(b) (allowing the Court to consider involuntary dismissal *sua sponte* "if no action has been taken by the parties in six (6) months").

The other factors articulated by the Second Circuit in *In re World Trade Ctr.* also support dismissal of ValveTech's claims. 722 F.3d at 486. This Court has previously acknowledged that "prejudice resulting from unreasonable delay may be presumed as a matter of law." *Oliver*, 2017 WL 3621984, at *2 (quoting *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993)); *see also Shannon v. GE*, 186 F.3d 186, 195 (2d Cir. 1999) ("A presumption of prejudice is particularly appropriate where, as here, the plaintiff's delay was prolonged.").

What is more, OHB has actually been prejudiced because ValveTech's delay in prosecuting this action may affect the ability of witnesses to testify fully regarding the relevant facts now that more than seven years from the incidents in question have elapsed. *See Oliver*, 2017 WL 3621984, at *3 (explaining that plaintiff's failure to participate in discovery prejudiced defendant because "[w]itnesses' recollections of the events . . . can be [a]ffected by the significant passage of time, and conducting discovery can become unduly burdensome for [d]efendant as time passes" and therefore warranted dismissal for failure to prosecute). In balancing the Court's congestion with ValveTech's right to have its case heard, other courts in this Circuit have held that "dismissal of

an action for unreasonable delay does not implicate the plaintiff's due process rights, since 'the delay and resultant dismissal of plaintiff's case are of [its] own making.'" *Neighbors Organized to Save Amherst's Wetlands v. Acquest Wehrle, LLC*, No. 07-CV-297-JTC, 2011 WL 13359264, at *3 (W.D.N.Y. Oct. 20, 2011) (collecting cases).   Further, because ValveTech is represented by counsel, it had adequate notice through the Federal Rules of Civil Procedure and the Local Rules that failure to prosecute its case or comply with the Court's discovery deadlines could result in involuntary dismissal.   *See Staley v. Mika*, No. 1:08-CV-0305 GTS/RFT, 2010 WL 3907824, at *10 (N.D.N.Y. Sept. 29, 2010).   Because each of these Rule 41(b) factors weigh in favor of dismissal, this Court should exercise its discretion and involuntarily dismiss ValveTech's Amended Complaint with prejudice.

## CONCLUSION

For these reasons, OHB respectfully requests that the Court grant summary judgment in its favor on ValveTech's claims for (1) breach of contract, (2) declaratory judgment, and (3) replevin, or, in the alternative, dismiss ValveTech's Amended Complaint for failure to prosecute.


Dated: New York, New York
        February 24, 2022

                                    */s/ Karl Geercken*

                                    Karl Geercken, Esq.
                                    Steven L. Penaro, Esq.
                                    ALSTON & BIRD LLP
                                    90 Park Avenue
                                    New York, NY 10016
                                    (212) 210-9471
                                    karl.geercken@alston.com
                                    steve.penaro@alston.com

                                    *Attorneys for Defendant*
                                    *OHB System AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 24, 2022, I caused a copy of the foregoing documents to be served upon the following counsel via First Class U.S. Mail:

**Laurie A. Vahey**
Vahey Law Offices, PLLC
144 Exchange Boulevard
Suite 400
Rochester, NY 14614
585-262-5130
Fax: 585-262-3474
Email: lvahey@vaheylaw.com
*Attorneys for Plaintiff ValveTech, Inc.*

*/s/ Karl Geercken*
Karl Geercken, Esq.
Steven L. Penaro, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9471
karl.geercken@alston.com
steve.penaro@alston.com

*Attorneys for Defendant*
*OHB System AG*