**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

VALVETECH, INC.,

        Plaintiff,

    v.            Case No. 6:19-cv-06829-CJS-MJP

OHB SYSTEM AG,

        Defendant.

---

### DEFENDANT OHB SYSTEM AG'S
### LOCAL RULE 56 STATEMENT OF MATERIAL FACTS

#### BACKGROUND FACTS

*The ExoMars Program*

  1.  OHB System AG ("OHB") is one of the leading space companies in Europe and specializes in high-tech solutions for space. These include low-orbiting and geostationary satellites for earth observation, navigation, telecommunications, science and space exploration as well as systems for manned space flight, aerial reconnaissance and process control systems. (Dkt. No. 49 at p. 27, ¶ 9).

  2.  In or around 2008, OHB (initially through an entity with which it later merged, Kayser-Threde GmbH) began collaborating with the European Space Agency ("ESA") and its other business partner, Thales Alenia Space ("TAS"), for the production of the ExoMars Rover for use in ESA's ExoMars program. (Dkt. No. 49 at p. 27, ¶ 10).

  3.  The ExoMars program involves a scientific exploration of the planet Mars that has been undertaken by ESA in cooperation with the Russian Space Agency

("Roscosmos") and the U.S. National Aeronautics and Space Administration ("NASA"). (Dkt. No. 49 at p. 27, ¶ 11).

4. The primary goal of the ExoMars program is to address the question of whether life ever existed on Mars. (Dkt. No. 49 at p. 27, ¶ 12).

5. OHB's responsibilities within the ExoMars program included developing several components of the ExoMars Rover. (Dkt. No. 49 at p. 28, ¶ 15).

6. The ExoMars Rover was initially expected to launch in July 2020. (Dkt. No. 49 at p. 28, ¶ 14).

7. To meet the goal of launching the ExoMars Rover by July 2020, OHB was expected to work under tight timeframes to ensure that the ExoMars Rover was fully constructed and subject to numerous tests to ensure that it could withstand the launch and surface conditions on Mars. (Dkt. No. 49 at p. 28, ¶ 16).

*OHB's Relationship And Non-Disclosure Agreements With ValveTech*

8. As part of its responsibilities to create instruments and specifications for the ExoMars Rover, OHB (initially through Kayser-Threde GmbH), began discussions about cooperating to develop a pressure relief valve with ValveTech, Inc. ("ValveTech"), a supplier of custom valves and related systems that is located in Phelps, New York. (Dkt. No. 9 at p. 2 ¶ 9; Dkt. No. 49 at p. 29, ¶ 22).

9. On December 10, 2013, ValveTech sent OHB a quotation for three valves – a qualification valve, flight valve, and spare valve – and confirmed that ValveTech would

2

also provide OHB with a fourth development unit valve at no cost on which to conduct initial testing. (Ex. A).[1]

10. In furtherance of their relationship, on or about November 21, 2014, OHB and ValveTech entered into a Non-Disclosure and Proprietary Rights Agreement ("2014 NDA"). (Dkt. No. 9 at p. 3 ¶ 14; Ex. B).

11. The 2014 NDA was superseded in the summer of 2016, when OHB and ValveTech executed a Non-Disclosure and Proprietary Rights Agreement ("2016 NDA") in connection with the ExoMars program. Although it was named as a party to the 2016 NDA, TAS did not execute the agreement, rendering it operative only as to OHB and ValveTech. (Dkt. No. 9 at p. 4 ¶ 18; Ex. C).

12. In the spring of 2018, ValveTech and OHB entered into a 2018 Non-Disclosure and Proprietary Rights Agreement (the "2018 NDA") in order to exchange certain "Proprietary Information" for the purpose of evaluating a possible business arrangement between them related to the purchase and sale of certain products designed and manufactured by ValveTech. (Dkt. No. 9 at pp. 5-6, ¶ 28; Ex. D).

13. The 2018 NDA specifies that it "shall be governed by, interpreted and enforced in accordance with the laws of the United States of America and the State of New York . . . ." (Ex. D, ¶ 7.1).

14. TAS and OHB executed a separate non-disclosure agreement on or around July 11, 2018 in connection with the materials to be supplied by ValveTech for purposes of the ExoMars Rover. (Ex. E).

---

[1] All Exhibits referenced herein are annexed to OHB's accompanying Appendix to Local Rule 56 Statement of Material Facts.

*Purchase Order No. 225*

15.  On or around September 8, 2015, OHB sent ValveTech a Purchase Order numbered 4552225 ("Purchase Order No. 225") regarding the development valve that ValveTech had previously agreed to send to OHB free of charge in its December 10, 2013 quotation to OHB. (Dkt. No. 49 at p. 30, ¶ 33; Exs. A & F).

16.  Pursuant to Purchase Order No. 225, ValveTech agreed to provide OHB with the development valve for a period of six months, after which time the development valve was to be returned to ValveTech. (Dkt. No. 49 at p. 30, ¶ 34; Ex. F).

17.  Further, pursuant to the terms of Purchase Order No. 225, if OHB subsequently placed a purchase order with ValveTech to deliver a qualification valve, OHB was under no obligation to return the development valve to ValveTech. (Dkt. No. 49 at p. 30, ¶ 35; Ex. F).

18.  On September 21, 2015, ValveTech shipped the development valve to OHB pursuant to Purchase Order No. 225, so that OHB could determine the appropriate sizing of the valves and continue its efforts to develop certain specifications for its use in the ExoMars program. (Dkt. No. 9 at p. 9, ¶ 51; Dkt. No. 49 at p. 31, ¶ 36).

19.  The development valve, however, malfunctioned during the thermal cycling test. The valve started to degrade, which caused a violation of the technical requirements for pressure and flow rate. (Dkt. No. 9 at p. 9; ¶ 52; Dkt. No. 49 at p. 31, ¶ 37).

20.  Because the development valve malfunctioned, OHB returned it to ValveTech for repairs on or around April 20, 2016. (Dkt. No. 49 at p. 31, ¶¶ 38-39).

*Purchase Order No. 785*

21.  In need of valves for additional testing and for ultimate use in the ExoMars Rover, on or around November 13, 2015, OHB sent ValveTech a Purchase Order numbered

4

4552785 ("Purchase Order No. 785") requesting the additional three valves for the ExoMars project which ValveTech had previously agreed to provide OHB – the qualification valve, flight valve, and spare valve. (Dkt. No. 49 at p. 31, ¶ 42; Ex. G).

22.     OHB agreed to pay ValveTech $8,636 for each of these three valves. (Dkt. No. 49 at p. 31, ¶ 43; Ex. G).

23.     On July 25, 2018, OHB and ValveTech had a meeting to discuss the valve testing process, which was memorialized in written meeting minutes. (Ex. H).

24.     ValveTech subsequently shipped OHB the spare valve purchased and invoiced pursuant to Purchase Order No. 785 on or about August 1, 2018. (Dkt. No. 9 at p. 10, ¶ 61; Dkt. No. 49 at p. 32, ¶ 44).

25.     On September 11, 2018, OHB paid ValveTech the contractually-agreed upon amount for the spare valve, $8,636 – the invoiced amount of Purchase Order No. 785, and ValveTech received payment without issue. (Dkt. No. 49 at p. 32, ¶ 44; Exs. I & J).

26.     Along with the spare valve, ValveTech included a "Packing List" which referenced the Purchase Order number (4552785). This "Packing List" contained no obligation by OHB to return the spare valve to ValveTech. (Dkt. No. 49 at p. 32, ¶ 45; Ex. K).

27.     ValveTech also included a "Certificate of Conformance" which stated that "all programs, proposals, bilateral efforts, transactions and agreements between the parties hereto are subject to the terms contained in the ValveTech, Inc., Terms & Conditions . . . located at www.valvetech.net [and] are incorporated into this transaction as if fully set forth herein." The referenced Terms & Conditions (the "Terms and Conditions") were not otherwise transmitted to OHB. (Dkt. No. 9 at pp. 10-11, ¶¶ 61, 66-67; Exs. L & Z).

28. Although ValveTech shipped OHB the spare valve, ValveTech never shipped OHB either the flight valve or the qualification valve, both of which it had also requested pursuant to Purchase Order No. 785. (Dkt. No. 49 at p. 32, ¶ 49).

29. OHB repeatedly requested that ValveTech provide it with the valves it had agreed to provide; however, ValveTech never shipped OHB either the flight valve or the qualification valve. (Dkt. No. 49 at p. 33, ¶ 51).

*Purchase Order No. 786*

30. On that same day, ValveTech shipped the component parts of an unassembled valve to OHB, pursuant to a separate May 15, 2018 Purchase Order numbered 4567786 ("Purchase Order No. 786"), with a separate Packing List that referenced Purchase Order No. 786. (Dkt. No. 49 at p. 32, ¶ 46; Exs. M & N).

31. ValveTech shipped these component parts to OHB for the purposes of conducting a "bakeout" in which OHB would sterilize the component parts and then re-ship them to ValveTech for construction. (Dkt. No. 49 at p. 32, ¶ 47).

32. These component parts were related to an additional valve to be assembled and tested by ValveTech following successful testing of the qualification valve that ValveTech had agreed to send OHB. (Dkt. No. 49 at p. 32, ¶ 48).

33. Importantly, these component parts were *not* referenced in Purchase Order No. 785. (Dkt. No. 49 at p. 32, ¶ 48; Ex. G).

34. These component parts were, ultimately, never utilized in the bakeout process and currently remain, unused, with OHB. (Dkt. No. 49 at p. 32, ¶ 48).

*The Exportation Of The Spare Valve*

35. OHB subsequently re-exported the spare valve purchased in connection with Purchase Order No. 785 to TAS in Italy in September 2018 for sterilization and

6

integration into a pressure control system on the ExoMars Rover. (Dkt. No. 9 at p. 13, ¶ 72).

36. Specifically, the spare valve arrived at OHB at Weßling on August 8, 2018. Shortly thereafter, the valve was inspected and tested as part of a bakeout process. Both of these activities took place at OHB's offices located at Weßling. (Ex. O at p. 3-4).

37. The valve was later packed in a sealed transport coffer and on September 3, 2018, was personally transported to TAS, located at 253, Strada Antica di Collegno, 10146 Torino, Italy. (Ex. O at p. 3-4).

38. OHB received confirmation that the valve was received by TAS via personal delivery at the above address on September 4, 2018. (Ex. O at p. 3-4).

39. After that, the valve was integrated in the Analytical Laboratory Drawer (ALD) Structure of the ExoMars Rover. (Ex. O at p. 3-4).

40. On September 26, 2018, OHB submitted a Voluntary Self-Disclosure to the United States Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE") confirming that it had exported the spare valve to TAS. (Ex. P).

41. On June 18, 2019, the BIS issued a warning letter confirming that "based upon the facts and circumstances known to OEE at this time, OEE has decided not to refer this matter for criminal or administrative prosecution and is closing this matter with the issuance of this Warning Letter." (Ex. P).

42. In short, the following valves and parts were exchanged between OHB and ValveTech:

   a. The development valve, shipped to OHB on or around September 21, 2015, pursuant to Purchase Order No. 225. The development valve was returned to ValveTech on or around April 20, 2016.

7

  b. The spare valve, shipped to OHB on or around August 1, 2018, pursuant to Purchase Order No. 785, which had its own Packing List and invoice and for which OHB paid $8,636. The spare valve was subsequently installed into the ExoMars Rover and remains in the ExoMars Rover, unable to be removed.

  c. The bakeout parts, shipped to OHB on or around August 1, 2018, pursuant to Purchase Order No. 786, which had a separate Packing List and a commercial invoice. The bakeout parts were unused by OHB and remain in their packaging at OHB in Germany.

(Dkt. No. 49 at p. 33, ¶ 52; Exs. F, G, I, J, K, M, & N).

  43. The qualification valve and relief valve ordered by OHB pursuant to Purchase Order No. 785, however, have never been delivered to OHB. (Dkt. No. 49 at p. 33, ¶ 51).

## PROCEDURAL HISTORY

  44. On February 21, 2019, ValveTech commenced this action by filing a Complaint in the New York State Supreme Court (Monroe County). In its Complaint, ValveTech asserted three separate claims: (1) breach of contract based on various purported agreements between the parties, (2) declaratory judgment seeking to declare Purchase Order No. 785 invalid, and (3) replevin seeking to have the spare valve returned to it. (Dkt. No. 1, Exhibit B).

  45. On November 8, 2019, OHB properly removed this action from the New York State Supreme Court (Monroe County) to the Western District of New York on the basis of diversity of citizenship jurisdiction. (Dkt. No. 1).

  46. On November 15, 2019, OHB partially moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted (Dkt. No. 5).

  47. In response, on December 3, 2019, ValveTech filed an Amended Complaint, rendering the original Complaint moot. (Dkt. No. 9).

48. At the same time, ValveTech filed a separate motion to remand this case to the New York Supreme Court (Monroe County) (the "Remand Motion"). (Dkt. No. 10).

49. On January 8, 2020, OHB partially moved to dismiss the Amended Complaint as to ValveTech's breach of contract and replevin claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. OHB also opposed ValveTech's Remand Motion, arguing that, under the 2018 NDA, it had appropriate grounds for removal to the Western District of New York. (Dkt. No. 15).

50. On January 22, 2020, the parties appeared before the Court to discuss discovery and other scheduling matters. (Dkt. No. 26).

51. At this conference, the Court stayed electronic discovery until it issued a decision on the two pending motions. (Ex. Q, at p. 21, ¶ 6).

52. On February 28, 2020, the parties served Requests for Production and Interrogatories. (Exs. R, S, T, & U).

53. OHB served its objections and responses on March 30, 2020, while ValveTech did not serve its objections and responses until May 7, 2020, and served supplemental responses on December 7, 2020. (Exs. O, Q, V, W, & X).

54. On November 12, 2020, the parties had a conference before Magistrate Judge Pedersen to discuss mediation. (Dkt. No. 44).

55. The Court did not lift the stay on electronic discovery, but the parties agreed to meet and confer to discuss producing narrow categories of documents that would be useful for purposes of the mediation. (Ex. Y).

56. On November 24, 2020, the parties appeared again before Magistrate Judge Pedersen to discuss the matter further, and the Court ordered the parties to proceed with producing limited discovery for purposes of the mediation. (Dkt. Nos. 45 & 46).

57. The court-ordered stay on conducting full electronic discovery remained in place while the Court's decision on the motion to dismiss and motion to remand remained pending. (Dkt. No. 45).

58. On December 17, 2020, the Court partially granted OHB's pending motion and dismissed ValveTech's breach of contract claims as to two purported agreements (the STA Statement and the End-Use Statement), finding that neither one constituted a contract. The Court further denied ValveTech's Remand Motion. (Dkt. No. 47).

59. The parties engaged in an all-day mediation on January 12, 2021. The mediation proved unsuccessful. (Dkt. No. 48).

60. OHB filed its answer on January 15, 2021, and further asserted counterclaims against ValveTech for (1) tortious interference with OHB's contract with TAS, (2) tortious interference with OHB's business relations with TAS and with ESA, (3) breach of contract with OHB pursuant to Purchase Order No. 785 for failing to ship the flight valve and qualification valve, and (4) promissory estoppel. (Dkt. No. 49).

61. ValveTech filed its answer to OHB's counterclaims on February 5, 2021. (Dkt. No. 54).

62. The parties appeared before Magistrate Judge Pedersen on January 21, 2021 to discuss scheduling. (Dkt. No. 53).

63. The Court entered a scheduling order whereby fact discovery closed on September 17, 2021, and expert discovery closed on December 17, 2021. (Dkt. No. 60).

64. Thereafter, the parties agreed upon a Stipulation and Proposed Discovery Order, which was filed with the Court on March 12, 2021, and entered by the Court on March 19, 2021. (Dkt. No. 57).

65. Following negotiations and entry of the discovery protocol, counsel for OHB did not hear from ValveTech's counsel again until four months later, on July 15, 2021, at which time ValveTech's counsel indicated that they intended to discuss the status of the case and the discovery process further in a subsequent conversation. (Penaro Decl. ¶¶ 3-5).[2]

66. ValveTech's counsel, however, did not subsequently communicate with OHB's counsel for a period of over seven months, until, on February 23, 2022, ValveTech's counsel requested an extension of all deadlines in this action. (Penaro Decl. ¶ 6).

67. ValveTech's counsel have not made any filing in this case since July 19, 2021. (Penaro Decl. ¶ 7).

---

[2] The "Penaro Decl." refers to the accompanying Declaration of Steven L. Penaro, dated February 24, 2022.

Dated: New York, New York
      February 24, 2022

                                      */s/ Karl Geercken*

Karl Geercken, Esq.
Steven L. Penaro, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
(212) 210-9471
karl.geercken@alston.com
steve.penaro@alston.com

*Attorneys for Defendant
OHB System AG*

12