UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VALVETECH, INC.,

                              Plaintiff,

vs.

OHB SYSTEM AG,

                              Defendant.

_____

DECISION AND ORDER

19-CV-6829 (CJS)

## I. INTRODUCTION

Plaintiff ValveTech, Inc. ("ValveTech") filed this action against Defendant OHB System AG ("OHB") for breach of contract, a declaratory judgment, and replevin. Am. Compl., Dec. 3, 2019, ECF No. 9. OHB has since filed counterclaims for tortious interference with contract, tortious interference with business relations, breach of contract, and promissory estoppel. Answer and Countercl., Jan. 15, 2021, ECF No. 49. The matter is presently before the Court on the parties' respective cross-motions for summary judgment. Def. Mot. for Summ. J., Feb. 24, 2022, ECF No. 61; Pl. Mot. for Summ. J., Apr. 4, 2022, ECF No. 72.

For the reasons stated below, Defendant OHB's motion for summary judgment [ECF No. 61] is granted with respect to ValveTech's causes of action for declaratory judgment and replevin, and denied with respect to ValveTech's breach of contract claims and OHB's alternative argument requesting dismissal under Rule 41(b) of the Federal Rules of Civil Procedure. Plaintiff ValveTech's motion for summary judgment [ECF No. 72] is granted with respect to OHB's counterclaims for tortious interference with contract and tortious interference with business relations, and denied with respect to ValveTech's

breach of contract claim and OHB's counterclaims for breach of contract and promissory estoppel.

The Court will contact the parties at its earliest opportunity to schedule a pre-trial conference regarding the remaining claims.

## II. BACKGROUND

The following background has been drawn from the parties' respective statements of material fact and opposing statements, as well as the multitude of supporting exhibits, submitted pursuant to Rule 56(a) of the Local Rules of Civil Procedure of the Western District of New York. Def. Statement of Fact, Feb. 24, 2022, ECF No. 61-29; Pl. Statement of Fact, Apr. 13, 2022, ECF No. 78-1.

Plaintiff ValveTech is a developer and manufacturer of custom valves located in Phelps, New York. In 2013, ValveTech was doing business with a company named Kayser-Threde GmbH, which was working with the European Space Agency on a program to determine whether life ever existed on the planet Mars. As part of that relationship, ValveTech sent an email to Kayser-Threde with cost information on "the ExoMars Pressure Relief Valve," which included costs for qualification valves, test valves, flight valves, and flight spare valves, and indicated that a development valve would be provided at no cost. The email also included cost information on engineering, tooling, and testing.

In 2014, Kayser-Threde merged with Defendant OHB, a European space company engaged in developing flight systems. Following the merger, ValveTech and OHB entered into a non-disclosure agreement ("2014 NDA") to remain in effect for a term of 20 years,

and in which Valvetech was identified as the "Disclosing Party," and OHB agreed "to use [ValveTech's] Confidential Information solely in connection with the[ir] contemplated business relationship, and . . . that the Confidential Information shall not be used for any other purpose or disclosed to any third party under any circumstances whatsoever, unless specifically agreed to by [ValveTech] in writing." *See, e.g.,* Def. Ex. B, Feb. 24, 2022, ECF No. 61-4.

Based on ValveTech's prior indication that it was willing to provide a development valve at no cost, OHB submitted a "Zero Value" purchase order to ValveTech on September 8, 2015. After exchanging emails with the OHB project manager to ensure that OHB agreed that ValveTech retained ownership of the "design and technology," ValveTech shipped the development valve on September 21, 2015. The development valve was compromised during OHB's testing, and was returned to ValveTech for repair on or about April 20, 2016.

In the meantime, on November 13, 2015, OHB submitted Purchase Order No. 4552785 ("PO 4552785") to ValveTech for a qualification model, a flight model, and a spare model of the ExoMars Relief Valve with a net value totaling $25,908 ($8,636 each). The purchase order also listed qualification testing at no cost, and acceptance testing totaling $13,200. On December 22, 2015, OHB submitted an "Amendment of Purchase Order" indicating that the cost of the qualification testing would be $32,000. The parties disagree both as to whether ValveTech agreed to fulfill PO 4552785, and to the nature and the scope of work the purchase order contained.

In 2016, ValveTech, OHB, and an Italian space company, Thales Alenia Space S.p.A. ("TAS"), attempted to negotiate a three-way non-disclosure agreement ("2016 NDA"). TAS was the "prime contractor" in the building of the "ExoMars Rover," and the products that ValveTech was developing for OHB were to be used in OHB's capacity as a sub-contractor on the ExoMars Rover project. The 2016 NDA identifies ValveTech as the "Disclosing Party," is for a term of five years, and again provides that the recipients agree "to use [ValveTech's] Confidential Information solely in connection with the[ir] contemplated business relationship, and . . . that the Confidential Information shall not be used for any other purpose or disclosed to any third party under any circumstances whatsoever, unless specifically agreed to by [ValveTech] in writing." ValveTech signed the 2016 NDA in June 2016 and OHB signed it in July 2016, but TAS never signed. In March 2017, OHB asked ValveTech if it could send the development valve to TAS, but ValveTech refused consent because TAS had not signed the 2016 NDA.

In the Spring of 2018, ValveTech and OHB entered into a third non-disclosure agreement ("2018 NDA"), "for the purpose of evaluating a possible business arrangement between them related to the purchase and sale of certain products designed and manufactured by [ValveTech] . . . and during the pendency of any business transactions subsequently agreed upon by" the parties. Whereas the 2014 NDA and the 2016 NDA protected ValveTech's "Confidential Information," the 2018 NDA was for the protection of the parties' "Proprietary Information," and provided that "[a]ll Proprietary Information disclosed will not be used or duplicated . . . by the Receiving Party, for any purpose other than the Purpose of this Agreement, and will be protected and kept in confidence by the

4

Receiving Party . . . ."

On July 25, 2018, representatives from both ValveTech and OHB met at ValveTech's facility in Phelps, New York. Minutes generated from this meeting by OHB indicate that ValveTech successfully completed the acceptance testing on valve S/N 0001, and was authorized by OHB to ship the valve (the "spare valve") and invoice OHB "the proportionate costs." ValveTech shipped the valve on August 1, 2018, along with a packing slip referencing PO 4552785 and a certificate of conformance which stated that "all programs, proposals, bilateral efforts, transactions and agreements between the parties hereto are subject to terms contained in the ValveTech, Inc., Terms & Conditions[1] . . . located at www.valvetech.net [and] are incorporated into this transaction as if fully set forth herein." At the same time, ValveTech generated an invoice for $8,636, which also referenced PO 4552785.

OHB continued to seek ValveTech's permission to ship the spare valve to TAS for use in the ExoMars Rover, but ValveTech never agreed in writing to allow OHB to disclose the spare valve to TAS. Nevertheless, on September 3, 2018, OHB delivered the spare valve to TAS' facility in Torino, Italy. The valve was installed in the ExoMars Rover, where it remains today. Upon learning of OHB's action, ValveTech terminated its relationship with OHB and demanded the return of the spare valve and its other confidential and proprietary information. On September 11, 2018, OHB wired a payment of $8,636 to ValveTech, and referenced the invoice number but not PO 4552785 with its payment. OHB has not yet returned the spare valve, or any of the valve parts or documents that

---

[1] It is unclear whether a full copy of the terms and conditions were enclosed with the valve.

ValveTech shipped to them in the course of their relationship.

On February 21, 2019, ValveTech filed a complaint against OHB in New York state court. OHB removed the action to this Court in November 2019, and shortly thereafter filed a motion to dismiss for failure to state a claim. ValveTech filed an amended complaint and a motion to remand the matter back to state court, and OHB again filed a motion to dismiss. On December 17, 2020, this Court denied ValveTech's motion to remand, and – finding New York law applicable to the case – granted in part and denied in part OHB's motion to dismiss.[2] *ValveTech, Inc. v. OHB Sys. AG*, No. 19-CV-6829 (CJS), 2020 WL 7398765, at *5 (W.D.N.Y. Dec. 17, 2020).

Along with its answer to Valvetech's remaining claims of breach of contract, declaratory judgment, and replevin, OHB filed in January 15, 2021 counterclaims for tortious interference with contract and business relations, breach of contract, and promissory estoppel. In February 2022, OHB filed a motion for summary judgment on each of ValveTech's claims, but did not move for summary judgment on their counterclaims. Def. Mot. for Summ. J., Feb. 24, 2022, ECF No. 61. In the alternative, noting ValveTech's inactivity in the eleven months between a stipulated discovery order in March 2021 and OHB's motion in February 2022, OHB seeks dismissal of ValveTech's Amended Complaint for its failure to prosecute the action. *Id.*

Although the Rule 16 scheduling conference originally established a deadline of February 25, 2022, for dispositive motions, the Court extended ValveTech's time to file a dispositive motion to April 4, 2022. Conf. Tr., 13:11–13, Mar. 8, 2022, ECF No. 69. On

---

[2] Specifically, ValveTech's breach of contract claim relative to the STA Statement and the End-Use Statement signed by the parties was dismissed. *ValveTech, Inc.*, 2020 WL 7398765, at *6.

that date, ValveTech filed a motion for summary judgment on each of its claims, as well as OHB's counterclaims. Pl. Mot. for Summ. J., Apr. 4, 2022, ECF No. 72.

### III. OHB'S MOTION FOR DISMISSAL UNDER RULE 41(b)

At the outset, the Court addresses OHB's argument that this case should be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for ValveTech's failure to prosecute. As the Second Circuit has stated repeatedly, dismissal under Rule 41(b) remains "a harsh remedy to be utilized only in extreme situations." *Theilmann v. Rutland Hospital, Inc.*, 455 F.2d 853, 855 (2d Cir. 1972) (*per curiam*). Before dismissing a case for failure to prosecute, the circuit court has directed courts to consider several factors that "significantly cabin a district court's discretion under Rule 41(b) . . . ." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). Specifically, a district court contemplating dismissing a plaintiff's case under Rule 41(b), for failure to prosecute must consider:

> [1] the duration of the plaintiff's failures, [2] whether plaintiff had received notice that further delays would result in dismissal, [3] whether the defendant is likely to be prejudiced by further delay, [4] whether the district judge has take[n] care to strik[e] the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard . . . and [5] whether the judge has adequately assessed the efficacy of lesser sanctions.

*LeSane*, 239 F.3d at 209 (quoting *Alvarez v. Simmons Mkt. Research Bureau, Inc.*, 839 F.2d 930, 932 (2d Cir. 1988)).

After considering each of the foregoing factors in light of the record in this matter, the Court concludes that the situation in the present case is not so extreme as to warrant

the harsh remedy of dismissal. OHB's request that ValveTech's Amended Complaint be dismissed for failure to prosecute is therefore denied.

## IV. SUMMARY JUDGMENT STANDARD

When both parties to an action have moved for summary judgment, each party's motion is examined on its own merits. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011) (citations omitted). With respect to each motion, "the trial court's task at the summary judgment motion stage . . . . is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Hence, summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007) (internal quotation marks and citation omitted).

On a motion for summary judgment, the evidence – and the inferences drawn from the evidence – must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As the Supreme Court has explained, there can be no genuine dispute as to any material fact where a party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, a "party asserting that a fact . . . cannot be genuinely

disputed must support that assertion by . . . citing to particular parts of materials in the record . . . [or] showing that the materials cited do not establish the absence or presence of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)–(2).

V. OHB'S MOTION FOR SUMMARY JUDGMENT

In its amended complaint, ValveTech alleges that OHB breached numerous provisions of the various contracts and agreements the parties had in place, including: the 2014 NDA, the 2016 NDA, the 2018 NDA, and ValveTech's "Terms and Conditions for All Sales." Am. Compl. at ¶ 84–128. In its second cause of action, ValveTech seeks declaratory judgment that PO 4552785 was not an enforceable contract. Am. Compl. at ¶ 129–138. For its third cause of action, ValveTech asserts a claim of replevin because it alleges that OHB has wrongfully retained possession of ValveTech's proprietary information and derivatives therefrom. Am. Compl. at ¶ 139–144.

In its motion for summary judgment, OHB seeks dismissal of each of these three causes of action. For ease of discussion, the claims are taken out of order.

**A. ValveTech's Claim for Declaratory Judgment**

OHB maintains that ValveTech is not entitled to a declaratory judgment that PO 4552785 is not a contract, because there is no "actual controversy" as to whether the purchase order constituted a valid contract between the parties. Def. Mem. in Supp., 23, Feb. 24, 2022, ECF No. 61-1. In response, ValveTech maintains that "there is plainly a controversy between the parties on whether that purchase order is a contract. In fact, that controversy is at the core of all of OHB's arguments on this motion . . . ." Pl. Mem. in Opp'n, 24, Apr. 4, 2022, ECF No. 74.

After a thorough review of the parties' papers, the records in evidence, and the relevant law, the Court finds that ValveTech's claim for declaratory judgment must be dismissed. The claim serves no useful purpose in clarifying or settling the legal issues involved in this action because these issues will be resolved through OHB's breach of contract counterclaim.

*1. Legal Principles*

The Declaratory Judgment Act provides in pertinent part that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201(a). The purpose of the act is to "create[ ] a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (citing Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)).

The Supreme Court has held that there is an "actual controversy" in a case if the dispute is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241 (1937)). However, whether or not to exercise declaratory jurisdiction is within the district court's broad discretion. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282–83 (1995).

10

To guide the exercise of the district court's discretion, the Second Circuit has "articulated a simple test that asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Dow Jones & Co. v. Harrods Ltd*., 346 F.3d 357, 359 (2d Cir. 2003) (citing *Broadview Chem. Corp. v. Loctite Corp*., 417 F.2d 998, 1001 (2d Cir. 1969)). The circuit court also identified several additional factors, used in other circuits, that are relevant to the district court's consideration:

> (1) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy.

*Dow Jones & Co*., 346 F.3d at 359–60 (citations omitted).

### 2. Application

In the present case, OHB claims that PO 4552785 constitutes a valid contract for the sale of the "spare valve," while ValveTech insists that it was not.

In its motion for summary judgment on ValveTech's breach of contract claims, which will be discussed in greater detail below, OHB states that "any technical information relating to the [spare] valve belonged to OHB, as the valve had been purchased by OHB and had been made to its specifications" under PO 4552785. Def. Mem. in Supp. at 18. Perhaps more to the point, in their counterclaim for breach of contract, OHB alleges that "OHB and ValveTech are both parties to Purchase Order No. [4552]785, a valid and enforceable agreement," and that ValveTech materially breached the purchase order by supplying the spare valve listed on the order but failing to provide the other two valves.

11

Countercl. at ¶ 81–83. Due to this alleged failure by ValveTech, OHB maintains that it has suffered damages of "no less than $4.25 million." Countercl. at ¶ 85.

By contrast, ValveTech states that "ValveTech did not agree to sell such valves to OHB before or after OHB sent the purchase order, because OHB was still developing the specifications for the valves, and ValveTech was not able to enter into a final agreement to manufacture something of unknown specifications." Pl. Mem. in Opp'n at 9. As evidence to support its position, ValveTech points to – among other things – the "meeting minutes" from a July 2018 meeting between OHB and ValveTech at ValveTech's facility in Phelps, New York. These minutes, from a meeting held nearly three years after the submission of the purchase order at issue, state that ValveTech is authorized to ship the valve in its current state and "to invoice the proportionate costs . . . ." Def. Ex. H, Dec. 14, 2022, ECF No. 92-2. ValveTech claims that this language is significant because it memorializes conversations during the meeting in which OHB agreed to pay the materials cost of the valve as OHB and ValveTech continued to work together to develop a functional valve.

The foregoing differences between the parties are enough to indicate a substantial controversy between the parties, who have adverse legal interests, of sufficient immediacy. However, given OHB's counterclaim for breach of contract, the Court finds that a declaratory judgment will serve no useful purpose in clarifying or settling the legal issues involved. *See Camofi Master LDC v. Coll. P'ship, Inc*., 452 F. Supp.2d 462, 480 (S.D.N.Y. 2006) (citing *Great Am. Ins. Co. v. Houston Gen. Ins. Co*., 735 F.Supp. 581, 585 (S.D.N.Y. 1990) ("The intent [of a declaratory judgment] is to allow a party to be free

from the whim of its opponent in deciding when to resolve the legal dispute between them.")). The question of the parties' obligations to one another with respect to the valves will all be resolved in the context of OHB's counterclaims. *Camofi Master LDC*, 452 F. Supp.2d at 480 (citation omitted). Accordingly, ValveTech's claim for declaratory judgment is dismissed.

## B. ValveTech's Breach of Contract Claim

ValveTech's cause of action for breach of contract alleges as follows:

85. Upon information and belief, Defendant improperly exported ValveTech's Confidential Information to a third-party direct competitor without its knowledge or permission in breach of the contracts and agreements between the parties.

86. In refusing to properly return ValveTech's Proprietary and Confidential Information, including any derivatives therefrom, which ValveTech provided to Defendant in connection with the ExoMars Programme, Defendant materially breached the NDAs.

87. Further, upon information and belief, Defendant has used and continues to use, directly or through derivative technology, ValveTech's Proprietary and Confidential Information despite the termination of its relationship with ValveTech is in clear violation of the NDAs [sic].

Am. Compl., Dec. 3, 2019, ECF No. 9.

OHB advances three arguments in support of its motion for summary judgment on ValveTech's breach of contract claims: (1) that OHB did not breach any confidentiality obligations to ValveTech under the NDAs the parties had in place; (2) that ValveTech has not shown resultant damages; and, (3) that OHB was not bound by ValveTech's "Terms and Conditions," and even if they were bound did not breach the agreement.

13

*1. The Parties' Non-Disclosure Agreements*

As described above, in the course of their business relationship, ValveTech and OHB executed three different non-disclosure agreements: the 2014 NDA, the 2016 NDA, and the 2018 NDA. ValveTech alleges that OHB breached these agreements when it exported the spare valve to TAS in Italy, when it refused to return ValveTech's confidential information following the termination of their relationship, and through its continued use of the valve and derivative technology. Am. Compl. at ¶ 85–87.

OHB argues that the 2014 NDA was superseded by the 2016 NDA and, in their reply brief to ValveTech's opposition, that the 2018 NDA is the only operative NDA between the parties. Def. Reply, 7, May 18, 2022, ECF No. 81. Further, OHB maintains that ValveTech's claims with respect to the non-disclosure agreements are without merit because OHB did not "disclose" any confidential or proprietary information to TAS in connection with the transfer of the valve. Def. Mem. in Supp. at 13. OHB states that OHB personnel personally transported the valve to TAS, oversaw the sterilization process at TAS, and then inserted the valve into the ExoMars Rover assembly without any significant TAS involvement that could have led to disclosure. *Id.* Additionally, OHB argues that even if confidential information had been disclosed, there was no breach because OHB had a separate non-disclosure agreement with TAS that requires TAS to keep the information confidential. *Id.* Finally, OHB argues that it owned the valve, and therefore had the right to transfer the valve to the ExoMars Rover at TAS. *Id.*

(a) OHB has not shown that the 2018 NDA is the only operative NDA between the parties. In support of its position that the 2018 NDA is the only operative NDA between

the parties, OHB cites § 6.1 of the 2018 NDA, which states:

> This Agreement represents the entire understanding and agreement of the parties hereto with respect to the Purpose and supersedes and cancels all prior representations, negotiations, commitments, undertakings, communications whether oral or written, acceptances, understandings and agreements between the parties with respect to or in connection with any of the matters or things to which such Agreement applies or refers.

Def. Ex. D, § 6, Feb. 24, 2022, ECF No. 61-6. ValveTech maintains that this clause should not be interpreted as superseding the other two NDA's because each of the three NDA's was for a distinct purpose: the 2014 NDA for the purpose of establishing a general business relationship; the 2016 NDA for the (unfulfilled) purpose of enabling a working relationship between three entities – OHB, ValveTech, and the project's prime contractor (and ValveTech competitor), TAS; and the 2018 NDA for the purpose of the potential sale of ValveTech products to OHB. Pl. Mem. in Opp'n at 11.

Integration clauses such as § 6.1 of the 2018 NDA "apply to preclude alleged agreements made prior to the signing of the contract containing the integration clause." *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp.2d 375, 412 (S.D.N.Y. 2011) (citing *Getty Ref. & Mktg. v. Linden Maint. Corp.*, 562 N.Y.S.2d 721, 722 (N.Y. App. Div. 1990)). Further, under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract even without an integration clause in the subsequent contract. *Marsh v. Cabrini Med. Ctr.*, No. 08 CIV 5405 (RJS), 2009 WL 1726331, at *3 (S.D.N.Y. Apr. 6, 2009) (citation omitted). "However, a subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *CreditSights, Inc. v. Ciasullo*, No. 05 Civ. 9345(DAB), 2007

15

WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007) (quoting *Globe Food Servs. Corp. v. Consol. Edison Co. of New York, Inc*., 584 N.Y.S.2d 820, 821 (N.Y. App. Div. 1992)). In such instances, terms in the prior agreement that are not covered in, or referenced by, the subsequent agreement are not superseded. *See Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp.2d 778, 793 (S.D.N.Y. 2008).

In the present case, § 6.1 indicates that the 2018 NDA supersedes all prior agreements "with respect to or in connection with any of the matters or things to which such Agreement applies or refers." The "Purpose" of the 2018 NDA was to govern the parties' exchange of certain "Proprietary Information" in order to "evaluat[e] a possible business arrangement between [OHB and ValveTech] related to the purchase and sale of certain products designed and manufactured by [ValveTech] and during the pendency of any business transactions subsequently agreed upon by them." Def. Ex. D at 2. The 2018 NDA defines Proprietary Information "as any information or data . . . disclosed by or on behalf of the Disclosing Party to the Receiving Party . . . . [and] deemed Proprietary Information when disclosed . . . ." Def. Ex. D at § 1.1, § 1.2. The term of the 2018 NDA was five years, and the parties "unconditionally and irrevocably submit[ted] to . . . the exclusive jurisdiction" of the state or federal court located in Monroe County, New York to "adjudicate and determine any suit, action or proceeding regarding or relating to [the] agreement." Def. Ex. D at § 4.2, 7.1.

By contrast, as ValveTech observes, the "recitals" of the 2014 NDA state that ValveTech and OHB, as the successor in interest to Kayser-Threde, are contemplating a business relationship, that Kayser-Threde had already executed a non-disclosure

agreement with ValveTech, and that OHB had "previously obtained [ValveTech's] Confidential Information . . . from Kayser-Threde." Def. Ex. B, 2, Feb. 24, 2022, ECF No. 61-4. Rather than "Proprietary Information," the 2014 NDA protects "Confidential Information," which includes "all information and material that has or could have commercial value or other utility in the business or prospective business of" ValveTech. Def. Ex. B at ¶ 1. The 2014 NDA further indicates that the Confidential Information could be "physical parts, on paper, communicated electronically or orally, or in any form of media . . . ." Def. Ex. B at ¶ 2. The term of the 2014 NDA was 20 years, and the parties agreed that they would submit to the jurisdiction of the federal and state courts of Monroe County, New York to resolve "any action brought with respect to" the 2014 NDA. Def. Ex. B at ¶ 7–8.

Lastly, the recitals in the 2016 NDA indicate that it is for a business relationship contemplated between ValveTech and both OHB and TAS, that would call for ValveTech to furnish proprietary and confidential information "in the frame of the ExoMars programme . . . ." Def. Ex. C., 2, Feb. 24, 2022, ECF No. 61-5. "Confidential Information" is again defined as "information or material that has or could have commercial value or other utility in the business or prospective business of" ValveTech. Def. Ex. C at 2. Similar to the 2014 NDA, the 2016 NDA also indicates that the Confidential Information could be "physical parts, on paper, communicated electronically or orally, or in any form of media . . . ." Def. Ex. C at ¶ 2. The term of the 2016 NDA was five years, but rather than submit to the jurisdiction of the state or federal court in Monroe County, New York to resolve any disputes, the 2016 NDA provided that all disputes in connection with and arising out of

the agreement "shall be submitted to settlement proceedings under the International Chamber of Commerce Amicable Dispute Resolution (ADR) Rules," and failing resolution through that process "such dispute shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce . . . ." Def. Ex. C at ¶ 7, 8.

Having carefully examined the three agreements in light of the parties' arguments, the Court finds that, for the purposes of summary judgment, OHB has not sufficiently demonstrated that the 2018 NDA addresses "precisely the same subject matter" – and therefore supersedes and cancels – the 2014 NDA and the 2016 NDA, respectively. Nevertheless, while the 2018 NDA may not be the only operative agreement for all of the allegations, the precept that a subsequent contract regarding "the same subject matter" supersedes the preceding contract compels the conclusion that only one of the agreements may apply to each of the various instances of breach that ValveTech alleges. That is, it may be that each item of confidential or proprietary information is protected by one of the three non-disclosure agreements between the parties, but the same item cannot be protected by two different agreements.

For instance, if the "ATP" that ValveTech claims that it submitted[3] to OHB on August 14, 2018 is protected by the 2018 NDA, it cannot also be protected by the 2014 NDA. Similarly, if the "DTR (Thales)" submitted on March 8, 2017 is covered by the 2016 NDA for the purposes of the ExoMars program, it cannot also be covered by the 2014 NDA for the purposes of the general contemplation of a business relationship. Which

---

[3] Following the termination of their relationship with OHB in 2018, ValveTech provided OHB with a list of hardware, drawings, and other information that it had sent to OHB between 2014 and 2018, and demanded the return of each of the items on the list. Pl. Ex. BB, Apr. 4, 022, ECF No. 74-30. The examples in this paragraph are drawn from that list.

items are protected by which agreement remains to be sorted out at trial.

(b) OHB's reliance on its separate non-disclosure agreement with TAS and its installation of the valve in the Rover without TAS involvement does not demonstrate entitlement to summary judgment. Summary judgment is appropriate in a breach of contract action "[w]here the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 98 (2d Cir. 1996) (internal quotation marks and citation omitted). "However, where a contract's language is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of language used in the contract becomes an issue of fact unamenable to resolution by summary judgment." *Volunteers of Am. of W. New York, Inc. v. Rochester Gas & Elec. Corp.*, No. 6:99-CV-6238-MAT, 2014 WL 3510495, at *6 (W.D.N.Y. July 14, 2014) (citing *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)) (internal quotation marks omitted).

In the present case, summary judgment is inappropriate on ValveTech's breach of contract claims because the parties clearly differ as to the meaning of the manner of protection afforded to ValveTech's Confidential or Proprietary Information. The 2014 and the 2016 NDAs both provide that "Recipients shall not communicate Confidential Information to any third party," and agree that it shall not be "disclosed to any third party under any circumstances whatsoever, unless specifically agreed to by [ValveTech] in writing." Def. Ex. B and Ex. C at ¶ 2, 4. The 2018 NDA provides that "[a]ll Proprietary

Information will be protected and kept in confidence by the Receiving Party, which shall use commercially reasonable efforts," and that "[a]ny release of Proprietary Information . . . to any person other than the parties [to the agreement] shall be approved by the Disclosing Party prior to release." Def. Ex. D at ¶ 2.2, 2.3.

OHB maintains that it did not breach these terms because the spare valve was both transported to TAS and installed directly into the ExoMars Rover by OHB personnel only, not TAS personnel. ValveTech, on the other hand, maintains that this conduct was a breach of the agreements, and has presented email evidence that as late as September 3, 2018, OHB personnel also acted as if the non-disclosure agreement in place required the approval of ValveTech before the spare valve could be transported to TAS in Italy. *See* Pl. Ex. AA, Apr. 4, 2022, ECF No. 74-29; *see also Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (the non-moving party's introduction of relevant extrinsic evidence supporting that party's interpretation of the language may raise a genuine issue of fact). Based on this difference in understanding and the reasonable interpretations by both parties, the Court finds that the contract is ambiguous, and the meaning of language used is an issue of fact "unamenable to resolution by summary judgment." *Volunteers of Am. of W. New York, Inc.*, 2014 WL 3510495 at *6.

(c) OHB has not demonstrated ownership of the valve. OHB also argues that "any technical information relating to the [spare] valve belonged to OHB, as the valve had been purchased by OHB and had been made to its specifications." Def. Mem. of Law at 17. ValveTech insists that it never entered a final agreement with OHB to sell the spare valve,

but rather that it shipped the spare valve in order to allow OHB to continue testing and development. Pl. Mem. in Opp'n at 13–14. Taking the arguments and the record evidence into account, the Court finds a genuine dispute as to the existence of a contract between OHB and ValveTech for the sale of the valve at issue.

"Under New York law a contract is formed once four elements are in place: (1) offer; (2) acceptance; (3) mutual assent; and (4) an intent to be bound." *Armstrong Pumps, Inc. v. Brewer-Garrett Co*., No. 08-CV-911A, 2010 WL 447394, at *3 (W.D.N.Y. Feb. 2, 2010) (citing *Vanlab Corp. v. Blossum Valley Foods Corp*., No. 04-CV-6183, 2005 WL 43772, at *2 (W.D.N.Y. Jan.10, 2005)).

OHB maintains that it made ValveTech an offer when it submitted PO 4552785 in November 2015 for – among other things – three valves at $8,636 each (Def. Ex. G), and that ValveTech's shipment of the spare valve in August 2018 (Def. Ex. K) and its subsequent acceptance of payment for the spare valve in September 2018 (Def. Exs. I and J) together show all of the elements of contract formation.

ValveTech, on the other hand, insists that no contract was formed. It points to (1) the lapse of nearly three years between the offer and the alleged acceptance, (2) minutes from the meeting at ValveTech's facility in July 2018 at which ValveTech maintains the parties reached an oral agreement that ValveTech would ship the valve for testing and OHB would cover the materials costs, and (3) an email communication well after the purchase order which referred to the spare valve that was shipped in 2018 as a "development valve." Def. Ex. H; Pl. Ex. O (stating in March 2017, "[w]e will not be able to provide the development valve at this time"). Further, ValveTech argues that even if

21

the Court were to find that the parties formed a contract for the sale of the spare valve, the evidence nevertheless shows that the contract did not include the unfettered right to share ValveTech's technology because ValveTech maintained up to and beyond OHB's export of the spare valve to TAS that it had the right to refuse the export. *See, e.g.,* Pl. Ex. R and Z (ValveTech's refusal in 2016 and 2017 to allow TAS to participate in development); Pl. Ex. Y (ValveTech's refusal after valve delivery in 2018 to allow the valve's export to TAS); Pl. Ex. BB (ValveTech's account of what went awry in its relationship with OHB, in an email addressed to a senior OHB executive).

The opposing positions of the parties, and evidence presented on behalf of each position demonstrate a genuine dispute over material facts that is not appropriate for resolution on summary judgment.

## 2. *ValveTech's Damages*

OHB claims that ValveTech's breach of contract claim fails because it cannot show resultant damages. ValveTech counterargues that not only can it show actual damages, but that even if it could not show actual damages it is still entitled to an award of nominal damages. The Court agrees that under New York law, if ValveTech can show a breach of the non-disclosure agreement(s), then it would be entitled at least to nominal damages regardless of whether or not nominal damages was specifically pled.

In New York, "[i]t is a well-settled tenet of contract law that even if the breach of contract caused no loss or if the amount of the loss cannot be proven with sufficient certainty, the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Medinol Ltd. v. Boston Sci. Corp*., 346 F.

Supp.2d 575, 599 (S.D.N.Y. 2004) (quoting *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp.2d 416, 421 (S.D.N.Y. 1999)). In *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985 (N.Y. 1993), the New York Court of Appeals held that "a breach of contract cause of action accrues at the time of the breach," and that "all of the elements necessary to maintain a lawsuit and obtain relief in court . . . were present at the time of the alleged breach . . . ." *Ely-Cruikshank Co.*, 615 N.E.2d at 987. The Second Circuit cited this holding when, in 2015, it declined to dismiss a breach of contract claim and explained that "even if [the plaintiff]'s allegations of substantial damages were too 'speculative' to support its claims, [the plaintiff] would have plausible claims for nominal damages" regardless of whether or not it asked for nominal damages in the pleadings. *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015); *see also* Compl., *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2011 WL 470764 at ¶ 109 (S.D.N.Y. 2011) (alleging merely that "[by] reason of the foregoing, [Plaintiff] is entitled to recover damages from [Defendant] in an amount to be determined at trial.").

In this case, the Court finds that if ValveTech can show a breach of contract, it has plausible claims to at least nominal damages even though it failed to specifically request nominal damages in its amended complaint. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075 (LJL), 2020 WL 3472597, at *8 (S.D.N.Y. June 25, 2020) (collecting cases). Therefore, summary judgment is not appropriate.

### 3. Terms and Conditions

With respect to the Terms and Conditions on ValveTech's website, OHB argues that these terms and conditions did not constitute an enforceable contract because they were provided on the packing slip and certificate of conformance only upon delivery of the spare valve, and hence there could not have been a meeting of the minds with respect to the essential terms of the contract. Def. Mem. of Law at 18. OHB also argues that even if it was a binding contract, it was not in breach of the terms and conditions because it was not prosecuted for export of the spare valve to TAS.

In opposition, ValveTech responds that OHB was on notice of the terms and conditions early on in the process when ValveTech objected to provisions in OHB's terms, and that both the packing slip and the certificate of conformance that arrived with the spare valve provided fair notice that retaining rather than returning the valve was an agreement to be bound by the terms and conditions. Pl. Mem. in Opp'n at 19–20.

"It is a basic tenet of contract law that, in order to be binding, a contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'" *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) (*citing Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 715 N.E.2d 1050 (N.Y. 1999)). Where an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent. *Starke*, 913 F.3d at 289 (citation omitted). Under New York law, courts evaluating whether an offeree was on inquiry notice of contract terms consider whether the term was obvious and called to the offeree's attention. *Id.* Whether

there was a meeting of the minds is a question of fact. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 534 (2d Cir. 1975).

Here ValveTech has presented evidence that both the packing slip and certificate of conformance contain unambiguous statements that ValveTech's Terms and Conditions apply to all sales. Pl. Ex. W. In addition, most emails in evidence from ValveTech to OHB between 2015 and 2018 contain some version of the statement that "All Contracts will be negotiated using VTI Terms and Conditions which can be Located @Www.valvetech.net," often in bright red or blue at the bottom of the email. *See, e.g.,* Pl. Exs. F, Q and R. Based on the record, then, OHB has not demonstrated an entitlement to summary judgment on the issue of whether there was a meeting of the minds regarding ValveTech's terms and conditions, as ValveTech has introduced evidence that a reasonable jury could find at least put OHB on inquiry notice.

Moreover, OHB is not entitled to summary judgment on its assertion that it did not breach ValveTech's terms and conditions simply because the United States Bureau of Industry and Security, Office of Export Enforcement ("OEE") did not refer the matter for prosecution. The Terms and Conditions provide that "Customer will not export any Product or information relating thereto except in compliance with all applicable U.S. laws and regulations controlling the export of technical data." Def. Ex. Z. OEE's letter to OHB following OHB's report of its export of the spare valve to TAS stated that "[w]e have reviewed the findings of this investigation and believe that the referenced conduct constitutes a violation(s) of the" relevant law and regulations. Def. Ex. P. The evidence indicates that OEE merely decided not to prosecute OHB; it does not suggest an

endorsement of OHB's conduct, or a finding that such conduct was lawful.

## C. ValveTech's Replevin Claim

OHB maintains that it is entitled to summary judgment on ValveTech's replevin claims because OHB purchased the valve at issue, and because ValveTech failed to demonstrate that its replevin claim was not a transmogrified contract claim. In response, ValveTech argues that although it would be futile to seek replevin with respect to the spare valve that is presently installed in the ExoRover at TAS' facility in Italy, it is nevertheless entitled to replevin for the parts that were shipped to OHB for testing and which have never been returned. The Court disagrees.

As the Court noted in its previous decision and order, the Second Circuit has stated that, "[i]f the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort." *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir.1980). A proper replevin claim must demonstrate a legal duty independent of the contract itself has been violated. *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987) (citations omitted).

Here, however, ValveTech's replevin claim is predicated on the fact that "it is undisputed that the NDAs require OHB to return all ValveTech products and information upon demand." Pl. Mem. in Opp'n at 21. This Court previously allowed the replevin claim to proceed following OHB's motion to dismiss "[t]o the extent that the return of ValveTech's Proprietary and Confidential property would serve ValveTech's interest in continued compliance with the Export Administration Regulations, as well." *ValveTech, Inc. v. OHB Sys. AG*, No. 19-CV-6829 (CJS), 2020 WL 7398765, at *8 (W.D.N.Y. Dec.

17, 2020). With its summary judgment motion, however, OHB has submitted evidence demonstrating that it reported to the United States government its responsibility for the export of ValveTech's technology to TAS, and that the government has declined to prosecute the export violation. Def. Ex. P. Further, to the extent that ValveTech seeks replevin of additional spare parts that it sent to OHB on August 1, 2018 that were not exported with the spare valve to TAS, ValveTech presents no persuasive evidence to indicate that the return of those parts is rooted in any duty independent of either the operative non-disclosure agreement or ValveTech's terms and conditions that are properly part of ValveTech's breach of contract claims. ValveTech's replevin claims must therefore be dismissed.

VI. VALVETECH'S MOTION FOR SUMMARY JUDGMENT

In its cross-motion for summary judgment, ValveTech argues that it is entitled to summary judgment on its breach of contract claims, declaratory judgment claim, and replevin claim. ValveTech also maintains that it is entitled to summary judgment on each of OHB's counterclaims. The Court agrees that ValveTech is entitled to summary judgment on OHB's counterclaims for tortious interference with contract and tortious interference with business relations. However, ValveTech is not entitled to summary judgment on any of its three claims, or on OHB's counterclaims for breach of contract and promissory estoppel.

**A. ValveTech's Causes of Action**

As discussed above, the Court finds merit in OHB's motion for summary judgment with respect to ValveTech's causes of action for declaratory judgment and replevin, which

are therefore dismissed. OHB is not entitled to summary judgment, however, on ValveTech's breach of contract cause of action. In its own motion, ValveTech maintains that it is entitled to summary judgment on this claim because (1) OHB does not genuinely dispute the enforceability of the NDAs, (2) it is undisputed that ValveTech performed its obligation under the NDAs, (3) OHB concedes that it exported the spare valve to TAS in violation of the NDAs and terms and conditions, and (4) that ValveTech has suffered damages as a result. The Court disagrees.

As indicated above, given the parties' differences in understanding and the reasonable interpretations by both parties of the respective non-disclosure agreements, the Court finds that the NDAs are ambiguous, and the meaning of language used is an issue of fact "unamenable to resolution by summary judgment." *Volunteers of Am. of W. New York, Inc.*, 2014 WL 3510495 at *6. Further, with respect to breach of ValveTech's Terms and Conditions, there are issues of fact as to whether there was a meeting of the minds regarding the substance of the contract. This genuine dispute over material facts precludes a grant of summary judgment to ValveTech on its breach of contract claims.

### B. OHB's Counterclaims for Tortious Interference

OHB's two tortious interference counterclaims are based on its allegations that ValveTech was aware of OHB's business and contractual relationship with TAS, and that both OHB and TAS were relying on ValveTech's provision of the flight and qualification valves for the ExoMars Rover, but that instead of sending the valves ValveTech "attempted to extort OHB for an additional $4 million 'licensing' fee . . . ." Countercl. at ¶ 64, 75. In its tortious interference with contract claim, OHB alleges that ValveTech caused

it to breach its non-disclosure agreement and contract with TAS by preventing "OHB from timely providing functioning valves to TAS for use in the ExoMars program." Countercl. at ¶ 66. In its tortious interference with business relations claim, OHB alleges that "[b]y attempting to extort an additional $4 million "licensing" fee from OHB, ValveTech intentionally used wrongful means and acted with the purpose of harming OHB's business relations with TAS and the European Space Agency. Countercl. at ¶ 78. ValveTech maintains that both of these claims are without merit.

### 1. Tortious Interference with Contract

Under New York law, the tort of inducement of breach of contract consists of five elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach the contract; (4) actual breach; and (5) harm to plaintiff. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)). Allegations that the plaintiff will breach or has breached its contracts with third parties as a result of defendant's conduct is not sufficient to state a claim for tortious interference with contract. *Symquest Grp., Inc. v. Canon U.S.A., Inc.*, 186 F. Supp.3d 257, 267 (E.D.N.Y. 2016) (citing *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp.2d 398, 405 (S.D.N.Y. 2012)). The plaintiff must allege that a third party breached its contract with the plaintiff, not vice versa.

OHB's tortious interference with contract claim is based on ValveTech's refusal to grant OHB permission to release the valve to TAS, as well as ValveTech's termination of the relationship following OHB's export of the spare valve to TAS and subsequent offer

to license its technology. However, OHB does not allege that TAS or any other third party breached contracts with OHB, only that OHB breached its contract with TAS. Countercl. at ¶ 66. Under New York law, this is not sufficient to state a claim of tortious interference with contract. *Plasticware, LLC*, 852 F. Supp.2d at 405. Accordingly, ValveTech is entitled to summary judgment on this counterclaim.

### 2. Tortious Interference with Business Relations

To establish a claim for tortious interference with business relations under New York law a party must prove: (1) that it had a business relationship with a third party; (2) that the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship. *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted). With respect to the second element, New York law requires the plaintiff to demonstrate "direct interference with a third party, that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Thompson v. Bosswick*, 855 F. Supp.2d 67, 82 (S.D.N.Y. 2012) (citing *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F. Supp.2d 507, 523 (S.D.N.Y. 2009)).

In the present case, other than ValveTech's 2016 failed negotiations with TAS to enter in to the 2016 NDA with ValveTech and OHB, OHB does not present any evidence that would suggest that ValveTech directed any activities toward TAS or attempted to convince TAS not to continue its business relationship with OHB. Further, although OHB alleges that ValveTech's offer to license its technology to OHB for $4 million was an

30

attempt at extortion, the email correspondence to which OHB refers specifically states that ValveTech "does not intend on hurting your future . . . . [But] I do not want the risk of doing business with OHB . . . ." Def. Ex. FF, Dec. 14, 2022, ECF No. 94-3. That is, as ValveTech had done in prior communications, ValveTech asserted a desire to protect its valuable intellectual property and good standing with the export authorities. *Compare* Pl. Ex. P (an email from ValveTech in 2017 reiterating that "VTI will NOT release the valve to ANYONE that does not have an NDA or who is not a party to our contract because there are #1 Handling concerns, #2 proprietary concerns and #3 export concerns.").

 "A person who asserts in good faith a legally protected interest of his own and thereby interferes with another person's business relations, does not interfere improperly." *Sirinakis v. Colonial Bank*, 600 F. Supp. 946, 955 (S.D.N.Y. 1984) (citing Restatement Torts (Second) § 773)). Because the evidence presented by both parties indicates that ValveTech was acting to protect its own legitimate interests, ValveTech is entitled to summary judgment on OHB's tortious interference with business relations claim, and the claim must be dismissed.

## C. OHB's Counterclaims for Breach of Contract and Promissory Estoppel

ValveTech maintains that it is entitled to summary judgment on OHB's counterclaim that ValveTech breached a contract with OHB for the sale of the three valves required for the ExoMars Rover. ValveTech argues that it never accepted PO 4552785 because it was not definite enough, and that ValveTech did not ship the spare valve to OHB in August 2018 as part of the contract but rather to continue testing and developing the valve specifications. As discussed at length above, taking the arguments and the

record evidence into account, the Court finds a genuine dispute as to the existence of a contract between OHB and ValveTech for the sale of the valves listed on PO 4552785. This is true whether viewing the evidence in the light most favorable to ValveTech or to OHB. Consequently, ValveTech is not entitled to summary judgment.

Further, ValveTech's position that OHB's promissory estoppel claim must be dismissed as duplicative of OHB's breach of contract claim is without merit. Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *Lamda Sols. Corp. v. HSBC Bank USA, N.A*., 574 F. Supp.3d 205, 214–15 (S.D.N.Y. 2021) (citing, *inter alia, Clark–Fitzpatrick, Inc. v. Long Island R. Co*., 516 N.E.2d 190, 193 (N.Y. 1987)). Nevertheless, plaintiffs who allege the existence of a valid contract "may . . . plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract." *Pers. Watercraft Prod. SARL v. Robinson*, No. 16-CV-9771, 2017 WL 4329790, at *11 (S.D.N.Y. Sept. 1, 2017) (collecting cases). Here, ValveTech disputes the existence of a contract to sell three valves to OHB. In light of this challenge to the existence of a valid and enforceable contract, OHB may pursue the alternative theory of promissory estoppel.

## VI. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant OHB's motion for summary judgment [ECF No. 61] is granted with respect to Plaintiff ValveTech's causes of action for declaratory judgment and replevin, and those claims are dismissed; and it is further

ORDERED that OHB's motion for summary judgment [ECF No. 61] is denied with respect to Plaintiff ValveTech's cause of action for breach of contract, which may proceed to trial; and it is further

ORDERED that Plaintiff ValveTech's motion for summary judgment [ECF No. 72] is granted with respect to Defendant OHB's counterclaims for tortious interference with contract and tortious interference with business relations, and those claims are dismissed; and it is further

ORDERED that Plaintiff ValveTech's motion for summary judgment [ECF No. 72] is denied with respect to Defendant OHB's counterclaims for breach of contract and promissory estoppel.

Dated:      January 3, 2023
            Rochester, New York

                                    ENTER:

                                    CHARLES J. SIRAGUSA
                                    United States District Judge